# 13-2340-cv(L), 13-2345-cv(CON)

## United States Court of Appeals

*for the*

## Second Circuit

SHIMON LAOR, BANCO GENERAL, S.A., EL PRADO TRADING, JULIA
ANWAR, on behalf of themselves and all others similarly situated investors in the
Greenwich Sentry, L.P. private investment limited partnership,
INTERAMRERICAN TRUST, ELVIRA 1950 TRUST, BONAIRE LIMITED,
CARLOS GAUCH, LOANA LTD., WALL STREET SECURITIES, S.A.,
HARVEST DAWN INTERNATIONAL INC., OMAWA INVESTMENT
CORPORATION, CARMEL VENTURES LTD., TRACONCORP, BLYTHEL
ASSOCIATED CORP., MARREKESH RESOURCES, CENTRO INSPECTION

*(For Continuation of Caption See Inside Cover)*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## CORRECTED NON-CONFIDENTIAL BRIEF FOR PLAINTIFFS-APPELLEES

VICTOR E. STEWART
LOVELL STEWART HALEBIAN
  JACOBSON LLP
61 Broadway, Suite 501
New York, New York 10006
(212) 608-1900

ROBERT C. FINKEL
WOLF POPPER LLP
845 Third Avenue
New York, New York 10022
(212) 759-4600

DAVID A. BARRETT
HOWARD L. VICKERY, II
BOIES, SCHILLER & FLEXNER LLP
575 Lexington Avenue
New York, New York 10022
(212) 446-2300

STUART H. SINGER
BOIES, SCHILLER & FLEXNER LLP
401 East Las Olas Boulevard
Fort Lauderdale, Florida 33301
(954) 356-0011

*Attorneys for Plaintiffs-Appellees*

AGENCY, KALANDAR INTERNATIONAL, LANDVILLE CAPITAL MANAGEMENT S.A., 20/20 INVESTMENTS, AXA PRIVATE MANAGEMENT, DIVERSIFIED INVESTMENTS ASSOCIATES CLASS A UNITS, ABR CAPITAL FIXED OPTION/INCOME STRATEGIC FUND LP, HAREL INVESTMENT AND FINANCIAL SERVICES LTD., MIGUEL LOMELI, JITENDRA BHATIA, GOPAL BHATIA, KISHANCHAND BHATIA, JAYSHREE BHATIA, MANDAKINI GAJARIA, ABN AMRO LIFE S.A., BAHIA DEL RIO S.A., DIAMOND HILLS INC., KIVORY CORPORATION, NORTH CLUB, INC., PFA PENSION A/S, TAURUS THE FOURTH LTD., ZENN ASSETS HOLDING, LTD., CARLOS MATTOS, CHANDRASHEKAR GUPTA, ULRICH BLASS, ROBERTO CIOCI, SANDRA MARCHI CIOCI, JOHN PAUL DOUGHERTY, LILA NEEMBERRY, PETER A. & RITA M. CARFAGNA IRREVOCABLE CHARITABLE REMAINDER UNITRUST, MOSHE PODHORZER, R. WICKNESWARI V. RATNAM, ENRIQUE SANTOS, ENRIQUE SANTOS CALDERON, JACQUELINE URZOLA, FELIPE J. BENAVIDES, FUNDACION VIRGILIO BARCO, DAVID HOPKINS, CATALINA MEJIA, CESAR MEJIA, R.M. RADEMAKER, THE ALPHA AND OMEGA PARTNERSHIP, LP, RICHMON COMPANY LTD., POSITANO INVESTMENT LTD., DAVID I. FERBER, THE KNIGHT SERVICES HOLDINGS LIMITED, on behalf of itself and all others similarly situated, FRANK E. PIERCE, FRANK E. PIERCE IRA, NADAV ZOHAR, on behalf of themselves and all others similarly situated, RONIT ZOHAR, on behalf of themselves and all others similarly situated, FAIRFIELD SENTRY LTD., HEADWAY INVESTMENT CORP., JOSEFINA SANTOS URZOLA, BPV FINANCE (INTERNATIONAL) LTD., JOSE ANTONIO PUJALS, individually and in their representative capacities for all those similarly situated, ROSA JULIETA A DE PUJALS, individually and in their representative capacities for all those similarly situated, MARIDOM LIMITED, a Foreign Corporation, RICARDO LOPEZ, STANDARD CHARTERED BANK INTERNATIONAL (AMERICAS) LIMITED, STANCHART SECURITIES INTERNATIONAL, INC., MARIA AKRIBY VALLADOLID, RICARDO RODRIGUEZ CASO, WONG YUK HING DE LOU, JOAQUINA TERESA BARBACHANO HERRERO, SAND OVERSEAS LIMITEDSAND OVERSEAS LIMITED, BLOCKBEND LTD, BAYMALL INVESTMENTS LTD, EASTFORK ASSETS LTD, GERICO INVESTMENTS, INC., ALICIA GAVIRIA RIVERA, EDUARDO CHILD ESCOBAR, MAILAND INEVSTMENT INC., AXA PRIVATE MANAGEMENT, PASHA S. ANWAR, on behalf of themselves and all others similarly situated investors in the Greenwich Sentry, L.P. private investment limited partnership, BEVINGTON MANAGEMENT, LTD., CALWELL INVESTMENT S.A., HEDGE STRATEGY FUND LLC, DEEPA GUPTA, E. THOMAS DOUGHERTY NOVELLA, MUNIANDY NALAIAH, MOISES LOU MARTINEZ,

*Plaintiffs*,

– and –

ST. STEPHEN'S SCHOOL, PACIFIC WEST HEALTH MEDICAL CENTER INC. EMPLOYEES RETIREMENT TRUST, On behalf of Itself, PACIFIC WEST HEALTH MEDICAL CENTER INC. EMPLOYEES RETIREMENT TRUST, on Behalf of All Others Similarly Situated, SECURITIES &

INVESTMENT COMPANY BAHRAIN, HAREL INSURANCE COMPANY, LTD., ST. STEPHEN'S SCHOOL, PACIFIC WEST HEALTH MEDICAL CENTER, INC. EMPLOYEE'S RETIREMENT TRUST,

*Plaintiffs-Appellees*,

– v. –

YANKO DELLAW SCHIAVA, PHILIP TOUB, LOURDES BARRENECHE, CORNELIS BOELE, MATTHEW C. BROWN, VIANNEY D'HENDECOURT, HAROLD GREISMAN, JACQUELINE HARARY, DAVID HORN, RICHARD LANDSBERGER, DAVID LIPTON, JULIA LUONGO, MARK MCKEEFRY, MARIA TERESA PULIDO MENDOZO, CHARLES MURPHY, SANTIAGO REYES, ANDREW SMITH, GREENWICH SENTRY, L.P., FAIRFIELD SENTRY LIMITED, PRICEWATERHOUSECOOPERS INTERNATIONAL LIMITED, PRICEWATERHOUSECOOPERS LLP (US), PRICEWATERHOUSECOOPERS LLP CHARTERED ACCOUNTANTS, FAIRFIELD INTERNATIONAL MANAGERS, INC., AMIT VIJAYVERGIYA, CORINA NOEL PIEDRAHITA, 1-20 JOHN DOES, STANDARD CHARTERED INTERNATIONAL (USA) LTD., STANDARD CHARTERED PLC, AMERICAN EXPRESS BANK LTD., AMERICAN EXPRESS BANK LTD., STANDARD CHARTERED BANK INTERNATIONAL (AMERICAS) LIMITED, A Foreign entity, STANDARD CHARTERED PRIVATE BANK, Foreign entity, and a private banking division of Standard Chartered Bank, STANDARD CHARTERERD BANK, GREGORY BOWES, STANDARD CHARTERED BANK INTERNATIONAL (AMERICAS) LIMITED, STANDARD CHARTERED BANK INTERNATIONAL (AMERICAS) LIMITED,

*Consolidated-Defendants*,

– and –

GLOBEOP FINANCIAL SERVICES LLC, FAIRFIELD GREENWICH LIMITED, a Cayman Island company, FAIRFIELD GREENWICH GROUP, FAIRFIELD GREENWICH (BERMUDA) LTD., FAIRFIELD GREENWICH ADVISORS L.L.C., WALTER M. NOEL, JR., ANDRES PIEDRAHITA, JEFFREY TUCKER, BRIAN FRANCOUER, AMIT VIGAYVERGIA, PRICEWATERHOUSECOOPERS BERMUDA, IAN PILGRIM, FAIRFIELD HEATHCLIFF CAPITAL LLC, FAIRFIELD RISK SERVICES LTD., PRICEWATERHOUSECOOPERS ACCOUNTANTS NETHERLANDS N.V., LION FAIRFIELD CAPITAL MANAGEMENT LIMITED, CARLOS GADALA-MARIA, RAUL MAS, ROBERT FRIEDMAN, RODOLFO PAGES, JOHN G. DUTKOWSKI, LUISA SERENA, MIGUEL CALVO, SAMUEL PERRUCHOUD, EFG CAPITAL INTERNATIONAL CORP.,

*Defendants*,

– and –

PRICEWATERHOUSECOOPERS ACCOUNTANTS N.V., CITCO FUND SERVICES (EUROPE) B.V., CITCO BANK NEDERLAND N.V. DUBLIN BRANCH, CITCO CANADA INC., CITCO GLOBAL CUSTODY N.V., CITCO GROUP LIMITED, CITCO FUND SERVICES (BERMUDA) LIMITED, PRICEWATERHOUSECOOPERS L.L.P.,

*Defendants-Appellants*.

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, undersigned counsel for Plaintiff-Appellees Harel Insurance Company Ltd., Securities & Investment Company (SICO) Bahrain and St. Stephen's School certifies as follows:

1.    Harel Insurance Company Ltd. (a private non-governmental party) is fully owned by Harel Insurance Investments and Financial Services Ltd.

2.    Securities & Investment Company (SICO) Bahrain (a private non-governmental party) has no parent corporation.  The National Bank of Bahrain and Ahli United Bank (AUB) each owns 10% or more of Securities & Investment Company (SICO) Bahrain's stock.

3.    St. Stephen's School (a private non-governmental party) has no parent company.  No publicly held corporation owns 10 percent or more of St. Stephen's School's stock.

/s/    David A. Barrett
DAVID A. BARRETT

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................ iv

GLOSSARY.................................................................................................xv

INTRODUCTION ......................................................................................... 1

STATEMENT OF ISSUES ............................................................................ 5

STATEMENT OF THE CASE.......................................................................5

    A.    The *Anwar* Action ................................................................5

    B.    Claims Against Citco ...........................................................8

    C.    Claims Against PwC ..........................................................10

    D.    Class Certification Motion .................................................11

    E.    Class Settlements with the Fairfield Greenwich and GlobeOp
        Defendants.........................................................................13

SUMMARY OF ARGUMENT ....................................................................13

STANDARD OF REVIEW ..........................................................................17

ARGUMENT .............................................................................................18

I.    THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN
    CERTIFYING FEDERAL SECURITIES CLAIMS AGAINST CITCO.....18

    A.    Reliance on the Funds' Net Asset Value Will Be Established
        through Common Evidence ................................................20

        1.    Common Evidence of Investor Reliance on Citco's False
            NAV Statements  ..................................................20

        2.    Common Evidence Proves Class-Wide Reliance on Citco's
            False Statements.....................................................24

i

B. Reliance Will Be Shown on a Class-Wide Basis under the *Affiliated Ute* Presumption ...................................................29

    1. Citco Made Material Omissions ...............................30

    2. Plaintiffs Are Entitled to a Presumption of Reliance on Citco's Omissions ....................................31

    3. A Presumption of Reliance Applies Here, Where There Are Both Omissions and Misrepresentations..................................34

C. Any Individual Issues of Reliance Do Not Render the District Court's Finding of Predominance an Abuse of Discretion .................36

    1. Initial Investments.....................................39

    2. Knowledge from Alternative Sources.......................40

    3. Plaintiffs' Awareness of Red Flags .........................42

II. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN CERTIFYING COMMON LAW CLAIMS AGAINST CITCO .................44

A. Common Issues Predominate on the Common Law Claims Against Citco...................................................44

B. Citco's Affirmative Defenses Do Not Preclude Certification ...........48

C. Citco's Standing Arguments Do Not Affect, Let Alone Preclude, Class Certification ................................................50

    1. Citco's Standing Arguments Are Not Properly Part of the Rule 23 Analysis ....................................50

    2. The Internal Affairs Doctrine Does Not Apply to Plaintiffs' Claims ..................................................52

    3. Class Members Have Standing to Bring "Holder" Claims Directly..................................................53

III. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN CERTIFYING COMMON LAW CLAIMS AGAINST PWC DEFENDANTS ..............................................57

A.    The Certification Order Complies with Rule 23 ..................................57

B.    Common Evidence Establishes Reliance on PwC Audit Opinions ....60

C.    Application of the *Credit Alliance* Test Is a Common Issue ..............64

IV.    IF CLASS CERTIFICATION IS NOT AFFIRMED, THE CASE
SHOULD BE REMANDED FOR FURTHER CONSIDERATION BY
THE DISTRICT COURT ..............................................................................68

CONCLUSION .....................................................................................................72

CERTIFICATE OF COMPLIANCE ...................................................................73

# <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

## <u>Cases</u>

*Abell v. Potomac Ins. Co.*,
    858 F.2d 1104 (5th Cir. 1988) ............................................................................24

*Abu Dhabi Commercial Bank v. Morgan Stanley & Co.*,
    269 F.R.D. 252 (S.D.N.Y. 2010) ...................................................................38, 62

*Abrams v. Donati*,
    66 N.Y.2d 951 (N.Y. 1985) ................................................................................54

*Ackerman v. Price Waterhouse*,
    683 N.Y.S.2d 179 (N.Y. 1st Dep't 1988) .......................................................62, 63

*Affiliated Ute Citizens of Utah v. United States*,
    406 U.S. 128 (1972) .................................................................................*passim*

*Allapattah Servs., Inc. v. Exxon Corp.*,
    188 F.R.D. 667 (S.D. Fla. 1999) .......................................................................25

*Am. Fin. Int'l Grp. – Asia, L.L.C. v. Bennett*,
    2007 WL 1732427 (S.D.N.Y. June 14, 2007)    ...............................................39

*Amgen, Inc. v. Conn. Ret. Plans & Trust Funds*,
    133 S. Ct. 1184 (2013) ..............................................................................*passim*

*Amusement Indus., Inc. v. Stern*,
    2010 WL 2976199 (S.D.N.Y. 2010) ...................................................................51

*Anwar, et al., v. Fairfield Greenwich Limited, et al.,(Anwar I)*,
    728 F.Supp.2d 354 (S.D.N.Y. 2010) ....................................................................6

*Anwar, et al., v. Fairfield Greenwich Limited, et al., (Anwar II)*,
    728 F.Supp.2d 372 (S.D.N.Y. 2010) ............................................................*passim*

*Anwar, et al., v. Fairfield Greenwich Limited, et al., (Anwar III)*,
    884 F.Supp.2d 92 (S.D.N.Y. 2012) ..............................................................*passim*

*Anwar, et al., v. Fairfield Greenwich Limited, et al*,
    800 F.Supp.2d 571 (S.D.N.Y. 2011) ..............................................................7, 65

*Ashbourne v. v. City of New York*,
   918 N.Y.S.2d 88 (App. Div. 2011)....................................................................49

*Assured Guar. (UK) Ltd. v. J.P. Morgan Inv. Mgmt. Inc.*,
   939 N.Y.S.2d 274 (N.Y. 2011).........................................................................6

*Basic Inc. v. Levinson*,
   485 U.S. 224 (1988) .......................................................................................39

*Becher v. Long Island Lighting Co.*,
   64 F.Supp.2d 174 (E.D.N.Y. 1999)................................................................44

*Bd. of Trs. of the AFTRA Ret. Fund v. JPMorgan Chase Bank*,
   269 F.R.D. 340 (S.D.N.Y. 2010)..............................................................45, 65

*Boeken v. Philip Morris Inc.*,
   127 Cal. App. 4th 1640 (Cal. Ct. App. 2005)..................................................28

*Bolin v. Sears, Roebuck & Co.*,
   231 F.3d 970 (5th Cir. 2000)...........................................................................58

*Bresson v. Thomson McKinnon Secs. Inc.*,
   118 F.R.D. 339 (S.D.N.Y. 1988).....................................................................20

*Brown v. Kelly*,
   609 F.3d 467 (2d Cir. 2010) .....................................................................*passim*

*Bruhl v. PricewaterhouseCoopers Int'l*,
   257 F.R.D. 684 (S.D. Fla. 2008) ..............................................................*passim*

*Buckley v. Control Data Corp.*,
   923 F.2d 96 (8th Cir. 1991)............................................................................52

*Chisolm v. TranSouth Fin. Corp.*,
   194 F.R.D. 538 (E.D. Va. 2000)....................................................................25

*Chris–Craft Indus., Inc. v. Piper Aircraft Corp.*,
   480 F.2d 341 (2d Cir.1973) ...........................................................................27

*Conway v. Icahn & Co., Inc.*,
   16 F.3d 504 (2d Cir. 1994) ............................................................................49

*Coopers & Lybrand v. Livesay*,
437 U.S. 463 (1978) ........................................................................69

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*,
502 F.3d 91 (2d Cir. 2007) ........................................................18, 69

*Credit Alliance Corp. v. Arthur Andersen & Co.*,
65 N.Y.2d 536 (N.Y. 1985)..................................................*passim*

*Cromer Fin. Ltd. v. Berger*,
205 F.R.D. 113 (S.D.N.Y. 2001)..........................................22, 26, 39

*Cromer Fin. Ltd. v. Berger*,
2001 WL 1112548  (S.D.N.Y. Sept. 19, 2011).............................66, 67

*Demmick v. Cellco P'ship*,
2010 WL 3636216 (D.N.J. Sept. 8, 2010)........................................28

*Di Benedetto v. Pan Am World Serv., Inc.*,
359 F.3d 627 (2d Cir. 2004) ...........................................................45

*Dinerstein v. Anchin, Block & Anchin, LLP*,
838 N.Y.S.2d 46 (1st Dep't 2007) ...................................................67

*Dorking Genetics v. United States*,
76 F.3d 1261 (2d Cir. 1996) ...........................................................68

*Drenis v. Haligiannis*,
452 F.Supp.2d 418 (S.D.N.Y. 2006) ...............................................53

*DuPont v. Brady*,
828 F.2d 75 (2d Cir. 1987) ........................................................30, 32

*Eisen v. Carlisle & Jacquelin*,
391 F.2d 555 (2d Cir. 1968) ...........................................................50

*Excimer Assoc., Inc. v. LCA Vision, Inc.*,
292 F.3d 134 (2d Cir. 2002) ...........................................................53

*Facciola v. Greenberg Traurig LLP*,
2012 WL 1021071 (D. Ariz. March 20, 2012)..................................33

*Feinberg v. Katz*,
    2007 WL 4562930 (S.D.N.Y. Dec. 21, 2007)......................................................62

*Feldman v. Cutaia*,
    951 A.2d 727 (Del. Supr. 2008) ...................................................................55, 56

*Fogarazzo v. Lehman Bros., Inc.*,
    232 F.R.D. 176 (S.D.N.Y. 2005)..........................................................................34

*Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt. LLC*,
    376 F.Supp.2d 385 (S.D.N.Y. 2005)........................................................42, 54, 55

*Gintis v. Bouchard Transp. Co., Inc.*,
    596 F.3d 64 (1st Cir. 2010) .................................................................................37

*Giovanniello v. ALM Media, LLC*,
    660 F.3d 587 (2d Cir. 2011) ................................................................................30

*Glanzer v. Shepard*,
    233 N.Y. 236 (N.Y. 1922)...................................................................................64

*Group Health Plan, Inc. v. Philip Morris Inc.*,
    621 N.W.2d 2 (Minn. 2001) .................................................................................28

*Grubbs v. Bailes*,
    445 F.3d 1275 (10th Cir. 2006)...........................................................................51

*Haynes v. Planet Automall, Inc.*,
    276 F.R.D. 65 (E.D.N.Y. 2011)...........................................................................28

*Hoxworth v. Blinder, Robinson & Co., Inc.*,
    903 F.2d 186 (3d Cir. 1990) ................................................................................35

*Inda v. United Air Lines, Inc.*,
    565 F.2d 554 (9th Cir. 1977) ...............................................................................69

*In re Agent Orange Prod. Liab. Litig. MDL No. 381*,
    818 F.2d 145 (2d Cir. 1987) ................................................................................36

*In re Am. Int'l Group, Inc. Sec. Litig.*,
    689 F.3d 229 (2d Cir. 2012) ................................................................................38

*In re Beacon Assocs. Litig.*,
   282 F.R.D. 315 (S.D.N.Y. 2012)............................................................32, 33, 34

*In re Beacon Assocs. Litig.*,
   745 F.Supp.2d 386 (S.D.N.Y. 2010)....................................................41

*In re Coordinated Title Ins. Cases*,
   2004 WL 690380 (N.Y. Sup. 2004)......................................................62

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
   574 F.3d 29 (2d Cir. 2009)......................................................................17

*In re Fosamax Prods. Liab. Litig.*,
   248 F.R.D. 389 (S.D.N.Y. 2008)............................................................49

*In re HealthSouth Corp. Secs. Litig.*,
   261 F.R.D. 616 (N.D. Ala. 2009)....................................................19, 29

*In re Home-Stake Prod. Co. Sec. Litig.*,
   76 F.R.D. 351 (N.D. Okla. 1977)..........................................................20

*In re Indus. Diamonds Antitrust Litig.*,
   167 F.R.D. 374 (S.D.N.Y. 1996)............................................................49

*In re Initial Pub. Offerings Sec. Litig. ("IPO"),*
   471 F.3d 24 (2d Cir. 2006).............................................................*passim*

*In re Lorazepam & Clorazepate Antitrust Litig.*,
   289 F.3d 98 (D.C. Cir. 2002)..........................................................51, 52

*In re Marsh ERISA Litig.*,
   265 F.R.D. 128 (S.D.N.Y. 2010)............................................................45

*In re Nassau Cnty. Strip Search Cases*,
   461 F.3d 219 (2d Cir. 2006).................................................................69

*In re New Motor Vehicles Canadian Exp. Antitrust Litig.*,
   522 F.3d 6 (1st Cir. 2008)......................................................................70

*In re Nigeria Charter Flights Contract Litig.*,
   233 F.R.D. 297 (E.D.N.Y. 2006)............................................................45

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
   148 F.3d 283 (3d Cir. 1998) ................................................................37

*In re Sadia, S.A. Sec. Litig.*,
   269 F.R.D. 298 (S.D.N.Y. 2010) ..........................................................34

*In re Salomon Analyst Metromedia Litig.*,
   544 F.3d 474 (2d Cir. 2008) ................................................................30

*In re UBS Auction Rate Sec. Litig.*,
   2010 WL 2541166 (S.D.N.Y. June 10, 2010) ......................................34

*In re Visa Check/Mastermoney Antitrust Litig.*,
   280 *F.3d 124, 136-140 (2d Cir. 2001),* ........................................*passim*

*Jenson v. Fiserv Trust Co.*,
   256 Fed. App'x 924 (9th Cir. 2007)......................................................19

*Johnson v. Nextel Commc'n, Inc.*,
   660 F.3d 131 (2d Cir. 2011) .................................................................44

*King County, Wash. v. IKB Deutsche Industriebank AG*,
   2012 WL 1592193 (S.D.N.Y. May 4, 2012)...................................66, 68

*King v. Club Med, Inc.*,
   76 A.D.2d 123 (N.Y. App. Div. 1st Dep't 1980).................................44

*Kirkpatrick v. J.C. Bradford & Co.*,
   827 F.2d 718 (11th Cir. 1987) ..............................................................23

*Klay v. Humana, Inc.*,
   382 F.3d 1241 (11th Cir. 2004)...............................................23, 25, 27

*LaGrasta v. First Union Sec., Inc.*,
   2005 WL 1875469 (M.D. Fla. Aug. 8, 2005)........................................28

*Levinson v. Westport National Bank*,
   No. 09-00269 (D. Conn. Dec. 14, 2011) ..............................................46

*Levitt v. PricewaterhouseCoopers, LLP*,
   2007 WL 2106309 (S.D.N.Y. July 19, 2007).......................................61

*Lewis v. McGraw*,
   619 F.2d 192 (2d Cir. 1980) .................................................................35

*LNC Inves., Inc. v. First Fidelity Bank*,
   173 F.3d 454 (2d Cir. 1999) .................................................................47

*Lowenschuss v. Resorts Int'l, Inc.*,
   181 F.3d 505 (3d Cir. 1999) .................................................................24

*Lyman Commerce Solutions, Inc. v. Lung*,
   2013 WL 4734898 (S.D.N.Y. Aug. 30, 2013) ....................................53

*Mallis v. Bankers Trust Co.*,
   615 F.2d 68 (2d Cir. 1980) .............................................................26, 42

*McLaughlin v. Am. Tobacco Co.*,
   522 F.3d 215 (2d Cir. 2008) .................................................14, 24, 38

*Meranus v. Gangel*,
   1989 WL 240072 (S.D.N.Y. Aug. 10, 1989) ......................................67

*Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*,
   500 F.3d 171 (2d Cir. 2007) .................................................................42

*Mfs. Hanover Trust Co. v. Drysdale Sec. Inc.*,
   801 F.2d 13 (2d Cir. 1986) ...................................................................48

*Moore v. PaineWebber, Inc.*,
   306 F.3d 1247 (2d Cir. 2002) ...............................................................18

*Morgan, Olmstead, Kennedy & Gardner, Inc. v. Schipa*,
   585 F. Supp. 245 (S.D.N.Y. 1984) ......................................................48

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   259 F.3d 154 (3d Cir. 2001) .................................................................35

*Pelman v. McDonald's Corp.*,
   272 F.R.D. 82 (S.D.N.Y. 2010) ...........................................................69

*Pension Comm. of Univ. of Montreal Pension Plan v. Banc of America
   Sec., LLC*,
   446 F.Supp.2d 163 (S.D.N.Y. 2006) ....................................22, 46, 47

*Prudential Ins. Co. of Am. v. Dewey, Ballantine, Bushby, Palmer & Wood*,
   80 N.Y.2d 377 (1992)...............................................................................65, 67

*Public Employees' Retirement System of Mississippi v. Merrill Lynch & Co., Inc.*,
   277 F.R.D. 97 (S.D.N.Y. 2011).........................................................................43

*Ross v. Bank South, N.A.*,
   885 F.2d 723 (11th Cir. 1989)...........................................................................24

*Schwab v. Philip Morris USA, Inc.*,
   449 F.Supp.2d 992 (E.D.N.Y. 2006).................................................................50

*Sec. Inv. Prot. Corp. v. BDO Seidman, LLP*,
   746 N.E.2d 1042 (N.Y. 2001)...........................................................................39

*Sec. Inv. Prot. Corp. v. BDO Seidman, LLP*,
   222 F.3d 63 (2d Cir. 2000)................................................................................67

*Shahriar v. Smith & Wollensky Rest. Group, Inc.*,
   659 F.3d 234 (2d Cir. 2011).................................................................16, 17, 58

*Sharp v. Coopers & Lybrand*,
   649 F.2d 175 (3d Cir. 1981)........................................................................34, 35

*Shores v. Sklar*,
   647 F.2d 462 (5th Cir. 1981).............................................................................24

*Solutia Inc. v. FMC Corp.*,
   456 F.Supp.2d 429 (S.D.N.Y. 2006).................................................................49

*Spencer v. Hartford Fin. Servs. Group, Inc.*,
   256 F.R.D. 284 (D. Conn. 2009)..................................................................27, 29

*Stanich v. Travelers Indem. Co.*,
   249 F.R.D. 506 (N.D. Ohio 2008).....................................................................28

*Steinberg v. Nationwide Mut. Ins. Co.*,
   224 F.R.D. 67 (E.D.N.Y. 2004).........................................................................45

*Stellema v. Vantage Press, Inc.*,
   109 A.D.2d 423 (N.Y. App. Div. 1st Dep't 1985)............................................44

*Stephens v. Nat'l Distillers & Chem. Corp.*,
  1996 WL 271789 (S.D.N.Y. May 21, 1996) ......................................................53

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*,
  552 U.S. 148 (2008) ......................................................29

*Strauss v. Long Island Sports, Inc.*,
  401 N.Y.S.2d 233 (2d Dep't 1978) ......................................................63

*Sykes v. RFD Third Ave 1 Assocs., LLC*,
  15 N.Y.3d 370 (2010) ......................................................66

*T.J. Raney & Sons, Inc. v. Fort Cobb, Okla. Irrigation Fuel Auth.*,
  717 F.2d 1330 (10th Cir. 1983) ......................................................24

*Tooley v. Donaldson, Lufkin & Jenrette, Inc.*,
  845 A.2d 1031 (Del. 2004), ......................................................54

*Tsereteli v. Residential Asset Securitization Trust 2006-A8*,
  283 F.R.D. 199 (S.D.N.Y. 2012) ......................................................42

*UFCW Local 1776 v. Eli Lilly & Co.*,
  620 F.3d 121 (2d Cir. 2010) ......................................................38, 59, 62

*U.S. Foodservice Inc. Pricing Litig.*,
  2013 WL 4609219 (2d Cir. Aug. 30, 2013) ......................................................*passim*

*Vega v. T-Mobile USA, Inc.*,
  564 F.3d 1256 (11th Cir. 2009) ......................................................59

*Waksman v. Cohen*,
  2002 WL 31466417 (S.D.N.Y. Nov. 4, 2002) ......................................................62

*Walco Invs., Inc. v. Thenen*,
  168 F.R.D. 315 (S.D. Fla. 1996) ......................................................19, 20, 32

*Wal-Mart Stores, Inc. v. Dukes*,
  131 S. Ct. 2541 (2011) ......................................................12, 17, 61

*Weinberg v. Hertz Corp.*,
  116 A.D.2d 1, 499 N.Y.S.2d 693 ......................................................44

*White v. Guarente*,
  43 N.Y. 2d 356 (1977)..........................................................................66

*Wiley v. Hughes Capital Corp.*,
  746 F. Supp. 1264 (D.N.J. 1990)..........................................................24

*Yudell v. Gilbert*,
  949 N.Y.S.2d 380 (App. Div. 1st Dep't 2012) ....................................54

*Zurich Ins. Co. v. Logitrans, Inc.*,
  297 F.3d 528 (6th Cir. 2002) ................................................................51

## Statutes

*New York's Martin Act*,
  N.Y. GEN. BUS. LAW, Art. 23-A, § 352 et seq. (McKinney 1996). ...................6

## Rules

FED. R. CIV. P. 23 ................................................................................ *passim*

FED. R. CIV. P. 23(a)......................................................................1, 57

FED. R. CIV. P. 23(b)........................................................................ *passim*

FED. R. CIV. P. 23(b)(1)(B) ....................................................................45

FED. R. CIV. P. 23(b)(2)...........................................................................58

FED. R. CIV. P. 23(b)(3)..................................................................... *passim*

FED. R. CIV. P. 23(c)(1)(C)......................................................................68

FED. R. CIV. P. 23(c)(4)......................................................................4, 69

FED. R. CIV. P. 23(c)(4)(A) .....................................................................69

FED. R. CIV. P. 23(f) ..........................................................................3, 51

# GLOSSARY

| | |
|---|---|
| A- | Joint Appendix |
| Certification Order | Decision and Order issued by Judge Victor Marrero, dated February 25, 2013 |
| Citco | The Citco Group Ltd., Citco Fund Services (Europe) B.V., Citco (Canada) Inc., Citco Global Custody, N.V., Citco Bank Nederland N.V. Dublin Branch, and Citco Fund Services (Bermuda) Limited |
| Citco Administrators | Citco Fund Services (Europe) B.V., Citco (Canada) Inc., Citco Fund Services (Bermuda) Limited |
| Citco Custodians | Citco Bank Nederland, N.V., Dublin Branch, Citco Global Custody N.V. |
| Citco Group Limited | The Citco Group Ltd. |
| GlobeOp | Globeop Financial Services LLC |
| Fairfield Sentry | Fairfield Sentry Limited |
| Fairfield Sigma | Fairfield Sigma Limited |
| FGG | Fairfield Greenwich Group |
| Greenwich Sentry | Greenwich Sentry L.P. |
| Greenwich Sentry Funds | Greenwich Sentry L.P., and Greenwich Sentry Partners, L.P. |
| Greenwich Sentry Partners | Greenwich Sentry Partners, L.P. |
| NAV | Net Asset Value |

PwC                     PricewaterhouseCoopers LLP and
                        PricewaterhouseCoopers Accountants, N.V.,

SAP-                    Special Appendix

SCAC                    Second Consolidated Amended Complaint, filed
                        September 29, 2009

## **INTRODUCTION**

There is no dispute here that all Rule 23(a) requirements are satisfied and critical common issues of law and fact exist as to virtually all of the elements required to establish liability.  Citco,[1] the administrator and custodian for a group of hedge funds established by the Fairfield Greenwich Group ("FGG"), argues, however, that the Rule 23(b)(3) requirement that common issues predominate cannot be met because Class members must individually establish reliance on Citco's misrepresentations to prevail on certain claims.  But Citco ignores that the information it falsely represented to investors – the net asset value ("NAV") of the Funds – was the essential – indeed, the only – valuation available for Class members' investments.  The NAV thus was the basis for all purchases and sales of the Funds.

When coupled with the indisputable materiality of the false information –

████████████████████████████████████████████

---

[1] Capitalized terms herein are defined in the Glossary.  *See supra* pp. xiv-xv. Unless otherwise indicated, all emphases are added and all citations are omitted in quotations.

[2] When the Funds collapsed in December 2008 following public disclosure of Madoff's fraud.████████████████████████████████████████

████████████████████████████ it follows that reliance on Citco's misstatement of the NAVs can be established through common evidence. Citco's uniform calculation, use and dissemination to Fund investors of false NAVs – inherently the most important information to investors – is in itself sufficient to affirm that the District Court did not abuse its discretion in finding predominance and certifying a class against Citco.

In addition, Citco did not disclose highly-material information ██████████ ████████████████████████████████████████████ ████████████████ and this constitutes a separate basis upon which class-wide reliance may be presumed. Moreover, most of the claims against Citco do not require proof of reliance; the claims for breach of contract, breach of fiduciary duty, and negligence present common issues of law and fact regarding the scope of Citco's duties to the investors and whether Citco was reckless and/or negligent in performing them.

PwC, the Funds' auditor for over a decade, echoes Citco in claiming that reliance on PwC's audit opinions cannot be shown through common evidence. The Class will demonstrate, however, that PwC's audit opinions – ██████████ ████████████████████████████████████████████ ████████████ are essential financial information upon which investors rely. The Class also will show that if PwC had conducted proper audits, the Funds

2

would have been unmarketable.  The question of Class members' reliance –
applicable only to the negligent misrepresentation claim against PwC – thus can be
determined by common evidence.  And the fundamental question at the center of
the Class' claims against PwC, *i.e.*, whether PwC was negligent in conducting its
audits, is undeniably common to all Class members.[3]

The District Court's ruling should be affirmed in all respects, including its
fact-intensive finding that reliance can be shown through common evidence.
Alternatively, even if reliance might present an individualized issue for certain
claims, critical common issues of law and fact still predominate under Rule
23(b)(3).  Finally, if this Court does not affirm the Certification Order, it should
remand to Judge Marrero to consider certification on a full record in light of this
Court's ruling.[4]  The interlocutory nature of this appeal underlies the need for such

---

[3] Citco and PwC also raise two merits issues.  Citco contends that Class members
lack standing to prosecute "holder" claims; PwC questions the District Court's
finding that the *Credit Alliance* requirements for suing auditors are satisfied.
While the Court should not reach these merits issues on a Rule 23(f) interlocutory
appeal, the District Court also correctly decided, and thoroughly addressed, these
issues in orders largely denying Defendants' motions to dismiss.  Moreover, to the
extent these issues may be decided as a matter of law, Defendants can move for
summary judgment on a full record in early 2014.  *See* Point IV *infra*.  The only
relevance of standing and *Credit Alliance* for present purposes is that they both
present common issues.

[4] For instance, the District Court might exercise its discretion to create subclasses
or sever any individual issues for separate adjudication after summary judgment

a remedy.  The class certification record closed nearly 18 months ago, yet since then, there has been exhaustive merits discovery; fact discovery is now closed and expert discovery is in progress.

As a result, there is now new evidence that is highly significant to the issues raised on appeal.  For example,



[5]  This powerful evidence of Citco's material omissions supports application of the *Affiliated Ute* presumption.  The Class also has obtained common evidence to meet the *Credit Alliance* test, such as PwC's own documents



on, or trial of, common issues.  *See* Rule 23(c)(4) (authorizing certification of a class "with respect to particular issues"); Point IV *infra*.  Because the FGG and GlobeOp Defendants have agreed to class settlements (*see* p. 13 *infra*), class certification is now relevant only to Citco and PwC.

[5]

## STATEMENT OF ISSUES

1.       Whether the District Court abused its discretion in certifying a class action with respect to (i) federal securities claims against Citco; (ii) common law claims against Citco; or (iii) negligence and negligent misrepresentation claims against PwC, all on the basis of findings that common issues of law and fact predominate, including its finding that reliance can be demonstrated through class-wide evidence.

2.       If Citco's standing arguments have any bearing on class certification, whether the District Court erred in its analysis of the standing issue in denying Defendants' motions to dismiss.

3.       Whether the *Credit Alliance* issue may be decided on common evidence establishing that Defendants (i) had duties to provide investors accurate financial information, (ii) knowledge of the investors' identities, and (iii) engaged in the requisite "linking conduct."

4.       Whether common issues of law or fact predominate even if reliance were an individual issue with respect to certain claims.

## STATEMENT OF THE CASE

### A.       The *Anwar* Action

The Class members are investors who suffered net cash losses in the Funds as of December 10, 2008 (*i.e.*, the total principal amount of each plaintiff's

5

investments exceeded their redemptions).  The Second Consolidated Amended

Complaint ("SCAC") alleges, *inter alia*, that the Funds' administrators, custodians,

and auditors made negligent and fraudulent statements to Class members inducing

them to make and hold investments in the Funds in violation of federal securities

law and New York law, and that Defendants breached contractual and fiduciary

duties owed to the investors.  *See* A-104-322.[6]

Defendants filed motions to dismiss the SCAC, raising a litany of arguments

including the standing and *Credit Alliance* issues raised in this appeal.  In an

exhaustive, count-by-count, defendant-by-defendant decision, the District Court

analyzed the merits of each claim.  *See Anwar v. Fairfield Greenwich Ltd.*, 728

F.Supp.2d 372 (S.D.N.Y. 2010) ("*Anwar II*").[7]  The Certification Order expressly

references those decisions for a "detailed description of the facts," SAP-4 n.5, and

it effectively incorporates their legal analysis.  *See* SAP-5 ("familiarity with

[*Anwar I* and *Anwar II*] is assumed").  The Class' claims all involve

misrepresentations made, and breaches of duties owed, directly to the investors:

---

[6] Citations in the form "A-__" are to the Joint Appendix and "SAP-__" to the
Special Appendix.

[7] The 198-page opinion in *Anwar II* followed a 44-page decision that held
Plaintiffs' claims were not precluded by New York's Martin Act.  *See* 728
F.Supp.2d 354 (S.D.N.Y. 2010) ("*Anwar I*").  Judge Marrero's analysis was
validated in *Assured Guar. (UK) Ltd. v. J.P. Morgan Inv. Mgmt. Inc.*, 939
N.Y.S.2d 274, 279-80 (N.Y. 2011).

"Plaintiffs' general theory is that . . . **accountants, custodians and administrators had responsibilities to individual investors, regardless of whatever duties the Defendants owed the Funds themselves**." *Anwar II*, 728 F.Supp.2d at 400.

The District Court sustained federal securities fraud claims against the Citco Administrators and Citco Group Limited.  It upheld common law claims for negligence, gross negligence, negligent misrepresentation, breach of fiduciary duty, aiding and abetting fraud and breach of fiduciary duty, and third-party breach of contract against the Citco Administrators; and claims against the Citco Custodians for breach of fiduciary duty and aiding and abetting fraud and breach of fiduciary duty.  Against PwC, claims of negligence and negligent misrepresentation were sustained.

In 2011 and again in 2012, PwC filed motions for reconsideration of Judge Marrero's refusal to dismiss the negligence counts, in both instances raising the same *Credit Alliance* arguments now made on appeal.  The District Court largely denied PwC's motions.  *See* 800 F.Supp.2d 571 (S.D.N.Y. 2011) and 884 F.Supp.2d 92 (S.D.N.Y. 2012) ("*Anwar III*").  It did, however, limit damages against PwC to losses incurred by existing investors who, after receiving a PwC audit report addressed to them, made new investments in Fund shares or continued to hold their shares.  *Anwar III*, 884 F.Supp.2d at 97.  Addressing PwC's second reconsideration motion, filed after class certification was fully-briefed, the District

7

Court expressly "recognize[d] that evidence uncovered during discovery might determine whether the Plaintiffs ultimately have proved all the elements of the *Credit Alliance* test," and invited PwC to raise the issue at summary judgment "when their argument may benefit from a fuller record." *Id.* at 98.

### B.    Claims Against Citco

Citco served as administrator for Fairfield Sentry beginning in 1992, for Fairfield Sigma since 1997, and for Greenwich Sentry and Greenwich Sentry Partners since 2006.  A-157-58.[8]  As administrator, one of Citco's primary duties was to calculate the Funds' NAV, *i.e.*, on a per-share basis, the total value of all investments held by each Fund minus its liabilities.  A-241-42; A-245.  The NAV served two critical purposes.  **First**, based on the NAV, Citco determined how many Fund shares investors received in exchange for their subscription monies, and how much money they received upon redeeming shares.  A-245-46.  **Second**, and relatedly, Citco used its NAV calculations to prepare the monthly statements it sent to investors informing them how much their Fund holdings were purportedly worth (these statements contained no information about the Funds' specific investment holdings).  *Id.*

---

[8] Citco Group Limited, the parent company, closely managed and controlled these subsidiaries.  A-157-60.

8

For fund administrators, the first rule in fraud prevention is to obtain data about a fund's investments from independent sources.  Only by reconciling data concerning investments received from one party (such as the fund's investment manager) with data provided by an independent party (such as a broker or custodian), can an administrator guard against fabricated trades or mistakes by either party.



Citco also was custodian for the Fairfield Sentry and Sigma Funds.  A-242-43.  A fund custodian is responsible for holding fund assets and settling trades.



### C.    Claims Against PwC

For more than a decade, PwC issued clean audit opinions without taking

proper steps to confirm independently that any of the Funds' assets, purportedly

worth billions, even existed.  The Class will use common evidence to prove at trial

that such steps were minimum requirements of a proper audit.[9]

PwC's objective, as stated in its audit plans, was



---

[9] Because the issue has been raised in other Madoff feeder fund cases, Plaintiffs emphasize that they do not contend PwC had a duty to audit Madoff's company or detect his Ponzi scheme.  PwC did, however, have a duty to verify that the assets shown on the Funds' balance sheets actually existed and the trades that increased the Funds' net worth actually occurred.

 The Class will show
through common evidence that disseminating PwC's "clean" audit opinions to
Plaintiffs was, indeed, the "**end and aim**" of PwC's engagement. *Credit Alliance*,
65 N.Y.2d at 549 (emphasis in original).

### D.    Class Certification Motion

On March 1, 2011, Plaintiffs moved for class certification.  Thereafter,
defendants took extensive discovery from seven proposed class representatives and
an additional twenty named plaintiffs of their choice.  This discovery included
Plaintiffs' production of over 75,000 pages of documents, and defendants
obtaining interrogatory responses from 27 separate plaintiffs and taking 18
depositions.  On January 13, 2012, defendants served a joint omnibus opposition to
class certification along with separate memoranda filed by each Defendant group.
Briefing on class certification closed on May 29, 2012.

The Certification Order, issued February 25, 2013, granted in part and denied in part class certification.[10] In reaching this decision, Judge Marrero "rigorously considered all of the Rule 23 requirements and the merits of the case, where appropriate, in reaching the conclusion that Plaintiffs' Proposed Class satisfies Rule 23's stringent requirements." SAP-15, n.6 (citing *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011)). Based on the substantial record, the District Court determined "[i]t is evident that common questions of law and fact exist in this proceeding. Where plaintiffs allege that class members have been injured by similar material misrepresentations and omissions, the Commonality Requirement is satisfied." SAP-8. The predominance requirement is satisfied as well:

> The critical issues for establishing liability in this case include whether Defendants engaged in a fraudulent scheme and made the false and misleading statements and omissions, whether those statements and omissions were material, whether Defendants acted with scienter, and whether Defendants' conduct injured members of the Class. Plaintiffs will likely rely on similar evidence when establishing each of the foregoing issues at trial and thus, common issues predominate over individual issues.

SAP-16. The Certification Order states "[t]his Class is subject to further adjustment or decertification as warranted as facts develop." SAP-4.

---

[10] The District Court excluded from the Class investors in 25 countries, which it found had not been shown likely to give preclusive effect to an opt-out class judgment. *See* SAP-3. Some 159 investors from those countries have joined the action as named plaintiffs.

E.    **Class Settlements with the Fairfield Greenwich and GlobeOp Defendants**

Plaintiffs settled with the FGG Defendants on November 6, 2012 for $80,250,000 plus other consideration.[11]  The District Court approved the FGG Settlement on March 25, 2013; three appeals from the settlement are pending.  On September 10, 2013, the District Court granted preliminary approval of a $5 million settlement resolving the claims against GlobeOp involving the Greenwich Sentry Funds, for which GlobeOp was administrator in 2003-06.

## SUMMARY OF ARGUMENT

The Certification Order applies to:  (i) federal securities claims against Citco; (ii) common law claims against Citco; and (iii) claims for negligence and negligent misrepresentation against PwC.  The District Court acted well within its discretion in certifying a class action because common evidence will show that Class members lost billions of dollars as a result of Citco's and PwC's uniform conduct and misleading statements.  The evidence of Citco's and PwC's actions and common courses of conduct is the same for every Class member.  Accordingly, common questions of fact and law relating to these claims greatly outweigh any individual issues.

---

[11] Of this amount, up to $30 million may be used by the FGG Defendants to pay or settle certain specified claims made against them by other parties.  Any part of this amount that is not so used will be distributed to the settlement class (less any allowed fees and expenses).

13

**First,** the District Court did not abuse its discretion in certifying federal

securities claims against Citco.  Citco's core argument is that individual investors

had different degrees of knowledge and ascribed different weights to what they did

know.  *See* Citco Br. 31-34; 43-49.  Citco relies, however, on garden-variety

securities cases involving price inflation and consumer actions where product

qualities were misstated.  This Ponzi scheme case is vastly different.  Because no

one would pay money for a worthless investment, which the Funds in fact were,

Citco's false NAV statements are so fundamentally important that they trump all

other information any investor may have considered.  As this Court recently held,

where plaintiffs allege that they paid the wrong price, "payment . . . 'may

constitute circumstantial proof of reliance upon a financial representation.'"  *In re*

*U.S. Foodservice Inc. Pricing Litig.*, 2013 WL 4609219, at *8 (2d Cir. Aug. 30,

2013) (quoting *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 225 n.7 (2d Cir.

2008)).

Independently, the finding of predominance is sustainable because of Citco's

material omissions that, among other things, (i) ███████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

Citco has not produced a shred of evidence indicating that **any** Class member was aware of this material information. Again, because the omissions directly relate to failure to disclose that the Funds were worthless, every investor, regardless of sophistication or diligence, was affected in the same, common way.

**Second,** the District Court did not abuse its discretion in certifying common law claims against Citco. Several of those claims – negligence, breach of contract, and breach of fiduciary duty – do not require proof of reliance, and for those that do, the same common evidence of reliance – and presumption of reliance regarding omissions – is applicable.

While Citco challenges the Class members' standing to bring "holder" claims, "a district judge should not assess any aspect of the merits unrelated to a Rule 23 requirement." *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006) ("*IPO*"). This is not an issue of superiority under Rule 23(b): Either the holder claims are direct and may be advanced by investors or not. If not, **all** Plaintiffs will lose on the merits, whether the case is a class action or not. Thus, Citco's attempt to shoehorn a merits issue into this interlocutory appeal should be rejected. In any event, the Class members have standing because the holder claims are direct. The injury that Citco caused to investors is distinct from any injury Citco may have caused to the Funds, and Class members' damages are asymmetrical, that is, not *pro rata* to the losses suffered by all shareholders.

**Third**, the District Court's certification of the negligent misrepresentation and negligence claims against PwC should be affirmed.  There is no merit to PwC's argument that the District Court was required to write an opinion expressly discussing each claim against each defendant; the court properly focused on discussing issues on which certification turned.  *See Shahriar v. Smith & Wollensky Rest Group, Inc.*, 659 F.3d 234, 252 (2d Cir. 2011) (this Circuit does not require "any particular verbal formula, nor that the district court make express findings on each requirement").

Nor is a finding of predominance precluded by the need for the Class to meet the *Credit Alliance* test.  PwC itself has heretofore treated *Credit Alliance* as a common issue – arguing three separate times to the District Court that Plaintiffs, as a group, cannot satisfy the test.  Further, the *Credit Alliance* analysis turns on a common issue, namely the auditor's knowledge and understanding of identified investors' reliance on its statements.  Common evidence from PwC's own documents and deposition admissions prove the relevant factors.

**Fourth**, if the Court were to find that the District Court erred or abused its discretion, the appropriate course is to remand to Judge Marrero to consider certification based on the current, far more fully-developed record, including certification of specified claims or issues.

## STANDARD OF REVIEW

Class certification is reviewed for abuse of discretion. *See, e.g., U.S. Foodservice*, 2013 WL 4609219, at *5. Although review is *de novo* if the legal standard is wrong, Citco Br. 23, the District Court here applied the correct legal test under Rule 23. *See* SAP-15 n.6 (citing *Wal-Mart*, 131 S. Ct. at 2551).

All of the issues in this appeal involve application of Rule 23's requirements to the facts, determinations that are reviewable only for abuse of discretion or clear error. Moreover, when certification is granted, this Court will "accord the District Court noticeably more deference than when [it] review[s] a denial of class certification." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 34 (2d Cir. 2009); *see Brown v. Kelly*, 609 F.3d 467, 485 (2d Cir. 2010) ("we are noticeably less deferential when the District Court has denied class status than when it has certified a class"). In addition, "[t]o the extent that the district court's ruling on an individual Rule 23 requirement is supported by a finding of fact, that finding is reviewed under the 'clearly erroneous' standard." *Id.* at 475. Based on these principles, a "district court vested with discretion to decide [class certification] is empowered to make a decision – of **its** choosing – that falls within a range of permissible decisions." *Shahriar*, 659 F.3d at 250 (emphasis in original).

17

## ARGUMENT

## I.  THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN CERTIFYING FEDERAL SECURITIES CLAIMS AGAINST CITCO

Citco does not challenge the District Court's finding that the Class' federal securities claims will involve several "critical issues for establishing liability" that will rise or fall based on class-wide evidence.  SAP-16.  These issues "include whether Defendants engaged in a fraudulent scheme and made the false and misleading statements and omissions, whether those statements and omissions were material, whether Defendants acted with scienter, and whether Defendants' conduct injured members of the Class."  *Id.*  Citco's sole argument is that individual issues of reliance outweigh issues that Citco agrees are common.

The "predominance requirement is met if the plaintiff can establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject to only individualized proof."  *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 107-08 (2d Cir. 2007).  The complete absence of issues subject to individualized proof is not required.  Rule 23(b)(3) is satisfied where "some of the legal or factual questions" can be resolved through "generalized proof" and "these particular issues are more substantial than the issues subject only to individualized proof."  *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002).

18

Citco argues (Citco Br. 30-33) that unless a stock is traded on an efficient market where reliance is presumed, predominance cannot be shown. However, neither the Supreme Court nor this Court has ever held that common evidence of reliance cannot be found in an appropriate case involving non-exchange traded securities. Citco fails to confront the actual misrepresentation for which Citco is liable under the federal securities laws – that the Funds had substantial NAVs when their true value was close to zero. Not only were all transactions in the Funds predicated on this fundamental price calculation, but no reasonable person – whatever other knowledge or investment objectives they might have – would pay substantial money for a worthless security. Moreover, the degree to which the NAVs were false – the materiality of the misrepresentation – could not be greater.

In cases that turn on a single, common fraudulent scheme, such as a Ponzi scheme, predominance can be shown for claims that require a showing of reliance. *See Jenson v. Fiserv Trust Co.*, 256 Fed. App'x 924, 926 (9th Cir. 2007) (Ponzi scheme presented a "center of gravity" for the fraud that predominated over individual issues); *In re HealthSouth Corp. Secs. Litig.*, 261 F.R.D. 616, 646 (N.D. Ala. 2009) ("individual issues of reliance do not predominate over questions common to the class" where class claims are based on a "single, common fraudulent scheme"); *Walco Invs., Inc. v. Thenen*, 168 F.R.D. 315, 333 (S.D. Fla. 1996) (certifying a class in a Ponzi case, over individualized reliance arguments,

19

where (as here) defendants included third-party service providers because common issues predominated; *Bresson v. Thomson McKinnon Secs. Inc.*, 118 F.R.D. 343 (S.D.N.Y. 1988) (same); *In re Home-Stake Prod. Co. Sec. Litig.*, 76 F.R.D. 351, 368 (N.D. Okla. 1977) (same).  Such cases involve an "overwhelming number of common factual and legal issues . . .  common to the class" that "predominate over any questions affecting only individual members."  *Walco*, 168 F.R.D. at 334.

These principles are controlling here for at least three independent reasons. **First**, common evidence will show that the NAV calculations by Citco were "uniformly misleading," SAP-13, and necessarily relied upon by investors in all transactions.  **Second**, the Class is entitled to a presumption of reliance based on Citco's omissions.  **Third**, even if reliance were an individual issue, Judge Marrero acted within his discretion in finding that common issues predominate.

### A.    Reliance on the Funds' Net Asset Value Will Be Established through Common Evidence

#### 1.    Common Evidence of Investor Reliance on Citco's False NAV Statements

Generalized proof will establish by compelling evidence that, when making their investment decisions, all Class members relied on Citco's statements.

20

████████████████████████████████[12]  When investors

purchased or decided to hold investments in the Funds, they paid and relied on a

per-unit price based on these values and calculations.

Because no market existed to set the Funds' prices, the price was determined

by dividing the purported value of the Funds by the number of shares outstanding.

███████████████████████████████████████████

███████████████████████████████  *See, e.g.*, A-3684-86.  Each

time Class members purchased, redeemed, or evaluated their investments, they

necessarily relied on the existence and value of the Funds as represented by Citco's

NAV.[13]  Judge Marrero further found that "any information relating to the Funds,

whether provided to Plaintiffs or Plaintiffs' agents, was likely obtained through the

Defendants."  SAP-14.

This finding applies squarely to Citco because there was no other source of

the Funds' value (besides PwC's annual audit opinions).  These were "the only

measure by which [investors] could evaluate shares in the Funds in order to make

---

[12] *See* A-3757-58 ¶¶ 7-8; A-3751-52 ¶¶ 6-7; A-3763-64 ¶¶ 7-8; 3754-55 ¶¶ 8-9; A-3766-67 ¶¶ 8-9; A-3769-71 ¶¶ 7,10; A-3760-61 ¶¶ 7-8.

[13] *See, e.g.*, A-11436 ████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

investment decisions." *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of America Sec., LLC*, 446 F.Supp.2d 163, 200 (S.D.N.Y. 2006). The centrality of NAV statements to investors making decisions of whether to purchase, sell, or retain interests in hedge funds is well-recognized. As Judge Marrero stated: "The NAV calculations, which Plaintiffs allege were crucial to their decisions to invest and hold investments, determined the number of shares Plaintiffs were entitled for a given investment in addition to their reported profits." *Anwar II* at 393; *see Cromer Fin. Ltd. v. Berger*, 205 F.R.D. 113, 131 (S.D.N.Y. 2001) ("It is difficult to imagine an investor putting money into any fund without relying on the integrity of the process for calculating the fund's NAV, as supported by auditor review"); *Bruhl v. PricewaterhouseCoopers Int'l*, 257 F.R.D. 684, 697 (S.D. Fla. 2008) ("the alleged fraudulent NAV statements were a material consideration which affected [plaintiffs'] investment decisions"). Indeed, if Citco's NAV statements had been accurate, the Funds' shares would have been unmarketable despite any other information an investor might have had.

Nor is certification affected by some Class members who may not recall whether they saw a Citco NAV before subscribing (Citco Br. 35-37). By definition, a transaction cannot occur without a NAV for two reasons: A NAV is necessary to calculate the number of shares purchased (which must be known in order to value the investment); and no investor would pay anything for shares

whose true NAV was close to zero.[14]  Accordingly, common evidence could "lead

a reasonable factfinder to conclude beyond a preponderance of the evidence that

each individual plaintiff relied on [Citco's] representations."  *Klay v. Humana,*

*Inc.*, 382 F.3d 1241, 1259 (11th Cir. 2004); *accord Bruhl*, 257 F.R.D. at 696

(certifying class against various Citco entities where "misrepresentations relating

to the NAV statements were made to the entire class" because investors would

consider such information "material in deciding either to invest in the Funds, to

remain invested in the Funds or to redeem their investments in the Funds").

Put differently, the fact that the Class' investments were worthless is

compelling evidence that investors relied on Citco's and PwC's statements that the

Funds had value.  *See, e.g.*, *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 722

(11th Cir. 1987) ("reliance may be established by proof that securities not traded

on the open market could not have been issued but for a fraudulent scheme by the

defendants").  Here, the District Court found "[w]ithout the fraud and other wrongs

alleged in this action, the Funds would not have existed."  *Anwar II*, 728 F.Supp.2d

at 401.  Plaintiffs will use class-wide direct and circumstantial evidence to

demonstrate that each investor relied on Citco's and PwC's representations that the

Funds had value that was backed by real assets, and the fact that the Funds were

---

14

worthless will form part of this common evidence.  *See, e.g.*, *Wiley v. Hughes Capital Corp.*, 746 F.Supp. 1264, 1294 (D.N.J. 1990) ("[E]ven extraordinarily risky investments may be marketable at some combination of price and interest rate, [but] it is inconceivable that a reasonable investor would purchase stock in a corporation which has no legitimate business purpose and which contains no assets."); *Abell v. Potomac Ins. Co.*, 858 F.2d 1104, 1121 (5th Cir. 1988) (A presumption of reliance is established where a plaintiff  "prove[s] that the defendants conspired to bring to market securities that were not entitled to be marketed.").[15]

### 2.   Common Evidence Proves Class-Wide Reliance on Citco's False Statements

In the context of class certification, "proof of reliance by circumstantial evidence may be sufficient under certain conditions."  *McLaughlin*, 522 F.3d at 225.  This rule reflects the commonsense proposition that courts will recognize an inference of reliance that logically flows from the facts and circumstances of a case.  *See Lowenschuss v. Resorts Int'l, Inc*., 181 F.3d 505, 510 (3d Cir. 1999) ("a trial court may infer reliance from the various facts and circumstances of a case");

---

[15] Although several circuits have endorsed the so-called fraud-created-the-market presumption of reliance, *see Shores v. Sklar*, 647 F.2d 462 (5th Cir. 1981); *T.J. Raney & Sons, Inc. v. Fort Cobb, Okla. Irrigation Fuel Auth.*, 717 F.2d 1330 (10th Cir. 1983); *Ross v. Bank South, N.A.*, 885 F.2d 723 (11th Cir. 1989), that issue need not be reached because overwhelming common evidence shows reliance.

24

*Chisolm v. TranSouth Fin. Corp.*, 194 F.R.D. 538, 560 (E.D. Va. 2000) ("Fraud

cannot be presumed, but reliance may be demonstrated by circumstantial or direct

evidence."); *Allapattah Servs.*, *Inc. v. Exxon Corp.*, 188 F.R.D. 667, 677 (S.D. Fla.

1999) (reliance upon false representations "may be proven by direct or

circumstantial evidence").

      This principle was expressly reaffirmed by this Court in *U.S. Foodservice*.

There, the Court held that the need to prove "reliance on a defendant's

misrepresentations . . . does not place fraud-based claims entirely beyond the reach

of Rule 23, provided that individualized issues will not predominate:"

> [P]ayment, as we have said, "may constitute circumstantial proof of
> reliance upon a financial representation." *Id.* at 225 n. 7. As in *Klay*,
> the defendant here is alleged to have sent the plaintiffs false billing
> information (albeit in this case misrepresenting the amount of money
> due rather than, as in *Klay*, that the proper amount had been paid).
> *Klay*, 382 F.3d at 1259. In cases involving fraudulent overbilling,
> payment may constitute circumstantial proof of reliance based on the
> reasonable inference that customers who pay the amount specified in
> an inflated invoice would not have done so absent reliance upon the
> invoice's implicit representation that the invoiced amount was
> honestly owed. Fraud claims of this type may thus be appropriate
> candidates for class certification because "while each plaintiff must
> prove reliance, he or she may do so through common evidence (that
> is, through legitimate inferences based on the nature of the alleged
> misrepresentations at issue). *Id.*

2013 WL 4609219, at *8.

      *U.S. Foodservice* also effectively refutes Citco's arguments asserting there

are individual questions concerning Class members' knowledge. Citco Br. 38-40,

41-49.  As this Court found, "[p]rovided the plaintiffs are successful in proving

that USF inflated their invoices and misrepresented the amount due [facts that are

indisputable in *Anwar*], proof of payment constitutes circumstantial evidence that

the plaintiffs **lacked** knowledge of the scheme."  *Id.* at *9 (emphasis in original).

Although Citco contends that ████████████████████████████████████

███████████████████████████████████████ "[c]ritically,

however, the record here contains **no . . . individualized proof** indicating

knowledge or awareness of the fraud by any plaintiffs."  *Id.* (emphasis in original).



████████ *See Mallis v. Bankers Trust Co.*, 615 F.2d 68, 80 (2d Cir. 1980)

("When matters are held to be peculiarly within defendant's knowledge, it is said

that plaintiff may rely without prosecuting an investigation, as he has no

independent means of ascertaining the truth.").

The same principles applied by this Court in *U.S. Foodservice* animated

Judge Cote's persuasive decision in *Cromer Fin. Ltd. v. Berger*, 205 F.R.D. 113,

131 (S.D.N.Y. 2001), that a rebuttable presumption of reliance was appropriate.

*Cromer* arose, like the instant case, from allegedly misstated NAVs and audit

opinions:

> In sum, as was true in *Basic*, it is "hard to imagine" that any investor in the Fund did not rely on the integrity of the NAV calculations. *Id.* at 247, 108 S. Ct. 978 (citation omitted). "Who would roll the dice in a crooked crap game?" *Id.* (citation omitted). The line of argument submitted by the plaintiffs is sufficient to permit a presumption of reliance. Courts presume reliance "where it is logical to presume that reliance in fact existed." *Chris–Craft Indus., Inc. v. Piper Aircraft Corp.*, 480 F.2d 341, 375 (2d Cir. 1973). It is difficult to imagine an investor putting money into any fund without relying on the integrity of the process for calculating the fund's NAV, as supported by auditor review. Just as the [fraud-on-the-market theory] presumes that investors rely on the integrity of a process – namely, that the market will incorporate material information about a security into its price – the theory advanced by the plaintiffs in this case also presumes that investors rely on the integrity of a process – namely, the processes by which the NAV of a private fund is determined and then confirmed by that fund's auditor. As in *Basic*, fairness, judicial economy, common sense and probability all support adoption of a rebuttable presumption that investors in the Fund relied in their investment decisions on the integrity of the NAVs calculated, issued and confirmed by the Bermuda Defendants.

*Id.*

At bottom, the Certification Order represents a straightforward application of the principles underlying *U.S. Foodservice* and *Cromer*, similar to certification in a variety of other contexts, where, as here, common circumstantial evidence of reliance predominated. *See, e.g., Klay*, 382 F.3d at 1259 (in RICO class action, common circumstantial evidence could "lead a reasonable factfinder to conclude beyond a preponderance of the evidence that each individual plaintiff relied on the defendants' representations"); *Spencer v. Hartford Fin. Servs. Group, Inc*., 256 F.R.D. 284, 302 (D. Conn. 2009) (circumstantial evidence common to entire class

27

could show reliance); *Stanich v. Travelers Indem. Co*., 249 F.R.D. 506, 521 (N.D.

Ohio 2008) (circumstantial evidence common to class could show reliance in an

insurance sales fraud); *LaGrasta v. First Union Sec., Inc.*, 2005 WL 1875469, at

*12 (M.D. Fla. Aug. 8, 2005) (in securities fraud class action "circumstantial

evidence that [could] be used to show reliance [was] common to the whole

class").[16]

This case is simply "not an instance where well advised purchasers would

have been likely to pay the fees [*i.e.*, buy Fund shares] for some reason other than

defendants' [] representations."  *Haynes v. Planet Automall, Inc*., 276 F.R.D. 65,

78 (E.D.N.Y. 2011).  Where a reasonable person would not have consummated a

transaction except in reliance on the claimed misrepresentation, the transaction

itself is sufficient evidence of reliance.  *See Demmick v. Cellco P'ship*, 2010 WL

3636216, at *23 (D.N.J. Sept. 8, 2010) ("It is reasonable in this case to presume

that individuals who undisputedly contracted for unlimited in-network and in-

family calling wanted and expected unlimited in-network and in-family calling.");

---

[16] *See also Boeken v. Philip Morris Inc.*, 127 Cal. App. 4th 1640, 1659 (Cal. Ct.
App. 2005) ("Reliance may be inferred from the circumstances attending the
transaction which oftentimes afford much stronger and more satisfactory evidence
of [reliance] than . . . direct testimony to the same effect"); *Group Health Plan,
Inc. v. Philip Morris Inc.*, 621 N.W.2d 2, 14 (Minn. 2001) ("[T]he causal nexus
and its reliance component may be established by other direct or circumstantial
evidence that the district court determines is relevant and probative as to the
relationship between the claimed damages and the alleged prohibited conduct.").

*Spencer*, 256 F.R.D. at 303 ("Though it is true ... that each plaintiff may have

accepted his or her settlement for somewhat different reasons, it is equally clear

that every plaintiff to whom a total dollar figure was represented relied on that

dollar figure in deciding whether to accept the settlement.").

Where defendants' "false statements about finances were precisely the kind

of representations upon which investors regularly and routinely rely," "probablity

and common sense" support class-wide reliance and hence, certification.  *In re*

*HealthSouth Corp. Secs. Litig.*, 261 F.R.D. at 645.  Accordingly, where defendants

make uniform material misrepresentations concerning the fundamental nature or

value of an investment, class certification is appropriate.  *See, e.g.*, *Bruhl*, 257

F.R.D. at 696 ("misrepresentations relating to the NAV statements were made to

the entire class" were "material [to class investors] in deciding either to invest in

the Funds, to remain invested in the Funds or to redeem their investments in the

Funds").

### B.    Reliance Will Be Shown on a Class-Wide Basis under the *Affiliated Ute* Presumption

Where "there is an omission of a material fact by one with a duty to disclose,

the investor to whom the duty was owed need not provide specific proof of

reliance."  *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148,

159 (2008) (citing *Affiliated Ute Citizens of Utah v. U.S.*, 406 U.S. 128, 154

(1972)).  "[I]f the plaintiff proves that the facts withheld are material in the sense

that a reasonable investor might have considered them important, reliance will be presumed." *DuPont v. Brady*, 828 F.2d 75, 78 (2d Cir. 1987). Materiality means there is "a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the total mix of information made available." *In re Salomon Analyst Metromedia Litig.*, 544 F.3d 474, 482 (2d Cir. 2008).

Although Judge Marrero found that "even absent . . . the *Affiliated Ute* presumption of reliance, common questions of law and fact clearly predominate," SAP-13, this Court "may affirm on any ground supported in the record, even if it is not the one on which the district court relied." *Giovanniello v. ALM Media, LLC*, 660 F.3d 587, 591 (2d Cir. 2011).

### 1.    Citco Made Material Omissions

Common evidence will show that Citco never disclosed that:



(v) 

The District Court record provides ample basis to apply *Affiliated Ute*.  For

example, 

2.   Plaintiffs Are Entitled to a Presumption of Reliance on Citco's
     Omissions



The omissions were material.  Investors

had no reason to think that Citco, a self-proclaimed industry leader in hedge fund



custody and administration, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮ It is indisputable that "a reasonable investor might have

considered [such facts] important," hence "reliance will be presumed." *Dupont*,

828 F.2d at 78.  Citco has cited no case in which a class was not certified where

comparable omissions existed.

Omissions similar to those at issue here have been found sufficiently

material for the purposes of the *Affiliated Ute* presumption.  *See, e.g.*, *In re Beacon*

*Assocs. Litig.*, 282 F.R.D. 315, 328-331 (S.D.N.Y. 2012) (certifying class because

defendants had duty to disclose when they learned Madoff was limiting access to

third parties and preventing customary due diligence); *Walco*, 168 F.R.D. at 331-

32 (certifying class applying *Affiliated Ute* presumption where omitted disclosures

regarding the checkered pasts of insiders running investment scheme "not only

would have [alerted] investors to their suspect investment schemes, but may have

prevented the fraud itself").

Based on analysis that is equally applicable here, Judge Sand in *Beacon*

certified a class of investors defrauded by a Madoff feeder fund.  The Court held

that, despite differences among the various investors, the action was properly

certified because "[a]t the heart of Plaintiffs' claims against both sets of defendants

is their assertion that they withheld the same material information from all of their

clients or investors:  namely, that neither they nor Ivy were performing due

diligence on Madoff's operations any longer."  282 F.R.D. at 327; *see also*

*Facciola v. Greenberg Traurig LLP*, 2012 WL 1021071, at *8 (D. Ariz. March 20,

2012) (certifying class action in $900 million Ponzi scheme involving material

omissions).

The core omission in *Beacon,* similar to this case, was the failure to disclose

"that no due diligence was henceforth to be performed on the investment manager

who managed over 70% of the Fund's assets."  *Beacon*, 282 F.R.D. at 330.

Echoing the District Court's analysis in the Certification Order, Judge Sand

granted certification of plaintiffs' fraud and negligent misrepresentation claims

because they "will predominantly rely on class-wide proof."  *id.,* at 331 (as to

§10(b) and §20(a) claims, "material misrepresentations and omissions that serve as

the basis of the claims are subject to common proof"; "scienter will be established

using common proof – namely, the internal emails and memoranda"; "liability can

be determined on a class-wide basis"; and "Plaintiffs can establish loss causation

on a class-wide basis").  The same common issues of law and fact exist here.  *See*

SAP-16.

### 3.    A Presumption of Reliance Applies Here, Where There Are Both Omissions and Misrepresentations

Citco argues that *Affiliated Ute* does not apply here because "plaintiffs' claims against Citco turn predominantly on alleged misrepresentations."  Citco Br. 31.  However, the *Affiliated Ute* presumption applies in cases involving both misstatements and omissions and the "flexible and practical approach is particularly sensible in light of the rationale behind the presumption."  *In re UBS Auction Rate Sec. Litig.*, 2010 WL 2541166, at \*26 (S.D.N.Y. June 10, 2010); *accord Beacon*, 282 F.R.D. at 334 (certifying class and applying *Affiliated Ute* presumption in case involving both misrepresentations and omissions); *Fogarazzo v. Lehman Bros., Inc.*, 232 F.R.D. 176, 186 (S.D.N.Y. 2005) ("plaintiffs' claims are based on a combination of omissions and misstatements, courts in this Circuit have acknowledged the applicability of the *Affiliated Ute* presumption"); *In re Sadia, S.A. Sec. Litig.*, 269 F.R.D. 298 (S.D.N.Y. 2010) (applying *Affiliated Ute* presumption in "mixed" case involving both misrepresentations and omissions).

As these decisions demonstrate, in cases involving both omissions and misrepresentations the "proper approach to the problem of reliance is to analyze the plaintiff's allegations, in light of the likely proof at trial, and determine the most reasonable placement of the burden of proof of reliance."  *Sharp v. Coopers & Lybrand*, 649 F.2d 175, 188 (3d Cir. 1981).  In *Sharp*, the court "embrac[ed] the obvious proposition . . . stated by the Second Circuit: 'We therefore presume

34

reliance only where it is logical to do so,'" *id.* at 188 (quoting *Lewis v. McGraw*,

619 F.2d 192, 195 (2d Cir. 1980)), reasoning:

> The opinion letter issued by Coopers & Lybrand was intended to influence the investment decisions of persons interested in WMC partnerships. The appellant undoubtedly foresaw that it would have that effect. As in *Affiliated Ute*, Coopers & Lybrand by its action facilitated the transactions at issue but failed to disclose certain facts. Its misrepresentation of other facts should not alleviate its burden of proving nonreliance. Considering the likelihood that investors would rely on the opinion letter, we conclude that the trial judge properly placed the burden of refuting a presumption of reliance on [Coopers & Lybrand].

649 F.2d at 189. Similarly, where there is a "uniform, material nondisclosure," a

presumption of reliance applies even though both misrepresentations and

omissions are alleged. *See Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,

259 F.3d 154, 175 (3d Cir. 2001) (citing *Hoxworth v. Blinder, Robinson & Co.,*

*Inc.*, 903 F.2d 186 (3d Cir. 1990)).

The same reasoning applies here. The NAV statements issued by Citco were

intended to influence the investment decisions of Class members and Citco

"undoubtedly foresaw that [the NAV statements] would have that effect. As in

*Affiliated Ute*, [Citco] by its action facilitated the transactions at issue but failed to

disclose certain facts," *Sharp*, 649 F.2d at 189,

35

### C.    Any Individual Issues of Reliance Do Not Render the District Court's Finding of Predominance an Abuse of Discretion

Points I.A-B above demonstrate that reliance will be proven on a class-wide basis.  Only if the Court were to disagree does it need to reach Citco's argument that individual issues of reliance preclude certification.  *See* Citco Br. 31-34.

As a general matter, the District Court's finding that common issues predominate is not an abuse of discretion even though certain individualized issues may exist.  The test is not whether there are individualized issues, but rather which questions predominate, *i.e.*, a weighing of common questions against individualized ones.  *See* Rule 23(b)(3).  Here, common issues permeate Plaintiffs' claims and "[b]ecause these issues are likely to be central to all of the plaintiffs' cases and could be dispositive to the resolution of some claims, the district court did not abuse its discretion in certifying" the Class.  *See Brown*, 609 F.3d at 484-85 (affirming certification while acknowledging affirmative defense would apply individually to certain plaintiffs and that "[o]ther claims could also potentially require individualized inquiries, but only if the district court agrees with the defendants on common threshold legal questions.").  Thus, even where "the district court will be required to make individualized inquiries with respect to some of the plaintiffs and some of the claims," it is "within the district court's discretion to find that common issues predominate[]."  *Id.* at 483; *see also In re Agent Orange Prod. Liab. Litig. MDL No. 381*, 818 F.2d 145, 165–67 (2d Cir. 1987) (class certification

36

affirmed because of the "centrality of the [defendants'] military contractor defense," despite "few, if any, [other] common questions of law" and the need for "highly individualistic" inquiries into causation); *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 315 (3d Cir. 1998) ("In particular, the presence of individual questions as to the reliance of each investor does not mean that the common questions of law and fact do not predominate.").

The question is whether the District Court abused its discretion in finding that core common issues outweighed any individual issues of reliance. Even in opposing certification, Citco and PwC acknowledged that there are critical common issues by suggesting that the litigation proceed with "one or more bellwether trials" if certification were denied. A-14308. This is a telling admission in light of "the need for a trial court to come to grips with the actual alternatives of common versus individual litigation in the specific circumstances." *Gintis v. Bouchard Transp. Co., Inc.*, 596 F.3d 64, 67 (1st Cir. 2010) (Souter, J.) (vacating denial of certification). Given the centrality of concededly common issues, "[t]he district court . . . possesses tools with which to manage the individualized inquiries that this action may require, including creating subclasses, decertifying the class with respect to claims where individualized inquiries become too burdensome, and holding separate trials for plaintiffs subject to individual defenses that remain after the common questions of law and fact are resolved."

37

*Brown*, 609 F.3d at 486.  And "the management of these issues" should be left "to the sound discretion of the [district] court."  *Id.*

While Citco's arguments addressing particular aspects of reliance are addressed below, at a more general level the cases Citco cites (Br. 31-33) which state that fraud cases are unsuitable for certification absent the fraud-on-the-market presumption involved reliance issues not remotely comparable to the facts here, where the false and non-disclosed information hid the fact that the Funds were virtually worthless.  Indeed, Citco fails to cite any case where predominance was rejected on such facts.[18]

---

[18] For example, *In re Am. Int'l Group, Inc. Sec. Litig.*, 689 F.3d 229, 241 (2d Cir. 2012), states only that "a litigation class's failure to qualify for [the] *Basic* presumption **typically** renders a trial unmanageable, precluding a finding that common issues predominate."  *AIG* has no bearing where, as here and in *U.S. Foodservice*, there is class-wide evidence of reliance absent the fraud-on-the-market theory.  In Citco's other cases, there were not, as here, any overarching misstatements and omissions fundamental to the transactions that overwhelm any individual differences.  *See, e.g.*, *UFCW Local 1776 v. Eli Lilly & Co.*, 620 F.3d 121, 133-34 (2d Cir. 2010) ("evidence in the record . . .  supports the conclusion that prescribing doctors do not generally consider the price of a medication when deciding what to prescribe for an individual patient," thus "[a]ny reliance by doctors on misrepresentations as to the efficacy and side effects of a drug . . . was not a but-for cause of the price that [plaintiffs] ultimately paid for each prescription"); *Abu Dhabi Commercial Bank v. Morgan Stanley & Co.*, 269 F.R.D. 252, 265 (S.D.N.Y. 2010) ("some sophisticated investors chose not to rely – or relied only minimally – on the [allegedly false] credit ratings"); *McLaughlin v. American Tobacco Co.*, 522 F.3d 215, 223 (2d Cir. 2008) (plaintiffs may have purchased cigarettes not based on defendants' misrepresentations, but because they

1.    <u>Initial Investments</u>

Citco argues that individual issues are created by the fact that investors did not receive NAV statements from Citco prior to making their initial purchases of the Funds.  Citco Br. 30-37.  This argument fails for several reasons.

**First**, by its very nature, the NAV is an integral part of any subscription, including initial purchases, because it defines the number of Fund shares that an investor receives.  **Second**, if Citco had accurately calculated the NAV, no reasonable investor would have bought the worthless Funds.  *See, e.g., Cromer*, 205 F.R.D. at 131 ("It is difficult to imagine an investor putting money into any fund without relying on the integrity of the process for calculating the fund's NAV, as supported by auditor review").  **Third**, no one would have made initial investments if ███████████████████████████████████████

---

"preferred the taste of Lights, or chose Lights as an expression of personal style").  Here, of course, it is undeniable that no one would purchase stock knowing it was virtually worthless.  *Cf. Basic Inc. v. Levinson*, 485 U.S. 224 (1988) (case involving alleged artificial inflation based on misstatements regarding a potential merger by a legitimate company); *Amgen*, 133 S. Ct. at 1193 (typical securities fraud case dealing with artificial inflation to some degree of the stock price of an otherwise legitimate company); *IPO*, 471 F.3d 24 (artificial inflation of stock prices where certain investors had knowledge of the fraudulent scheme); *Sec. Inv. Prot. Corp. v. BDO Seidman, LLP*, 746 N.E.2d 1042, 1047 (N.Y. 2001) (discussing reliance in the context of a motion to dismiss – not class certification); *Am. Fin. Int'l Grp. – Asia, L.L.C. v. Bennett*, 2007 WL 1732427, at *10 (S.D.N.Y. June 14, 2007) (same).

 **Fourth**, Citco highlights snippets of deposition testimony to argue that "some plaintiffs expressly acknowledged that they did not rely on any representation directly made by Citco." *See* Citco Br. 35. But these quotations do not address the fundamental importance to any rational investor that he or she is buying something that has real value – not a question of whether it is 5 or 10% overstated – but has no value at all. In any event, other evidence from the same investor demonstrates that with respect to subsequent investments:

[19]

### 2.   Knowledge from Alternative Sources

Citco argues that investors relied on information from sources other than Citco in making investment decisions. Citco Br. 38-40. For instance, Citco



---

[19] *See supra* at p. 21 n.12-13.

40



Citco Br. 38.  Citco cites no evidence, however, that the investor

learned anything that would call into question the investor's continued reliance on

Citco's NAV statements.

Moreover, the District Court properly rejected another aspect of Citco's

argument regarding alternative sources of information (Citco Br. 38-39):

> The use of third-party investment agents by the Plaintiffs also does
> not create individual issues of reliance that foreclose a finding of
> predominance because "misrepresentations made to an agent are
> deemed to [be] made to the principal."  *In re Beacon Assocs. Litig.*,
> 745 F.Supp.2d 386, 408 (S.D.N.Y. 2010).  This conclusion is only
> buttressed by the fact that there was little to no publically available
> information relating to Madoff investments, and therefore any
> information relating to the Funds, whether provided to Plaintiffs or
> Plaintiffs' agents, was likely obtained through the Defendants.

SAP-14.  The evidence cited by Citco does not render Judge Marrero's finding

clearly erroneous.  "The fact that a hedge fund investor would consider factors

41

other than the NAV statements, or the fact that some investors would have access to different data, does not eliminate the NAV statements as a relevant and material matter to be considered in the investment calculus." *Bruhl*, 257 F.R.D. at 697.[20]

### 3.   Plaintiffs' Awareness of Red Flags

Citco argues that some of the so-called "red flags" alleged in the SCAC were known publicly and therefore preclude any investor from proving reliance.  Citco Br. 41-42.  However, when the alleged "misrepresentations relate to matters peculiarly within the other party's knowledge" then the plaintiffs may reasonably rely even though they are unable to investigate.  *Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 181 (2d Cir. 2007) (citing *Mallis v. Bankers Trust Co.*, 615 F.2d 68, 80-81 (2d Cir. 1980) (Friendly, J.)).  This proposition applies here because there were no alternative sources to value the investments in the Funds.  *See Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt. LLC*, 376 F.Supp.2d 385, 411 (S.D.N.Y. 2005) (under New York law investor could reasonably rely on information concerning a hedge fund's value where defendants were "uniquely positioned to know" that information).

---

[20] In addition, "[g]eneral investment sophistication of certain class members does not show that any of the class members knew anything at all about [Citco's] alleged deviation from" ██████████████████████████ ██████ ███████ *Tsereteli v. Residential Asset Securitization Trust 2006-A8*, 283 F.R.D. 199, 213 (S.D.N.Y. 2012); *Cf.* Citco Br. 43.

Moreover, it was Citco's stature as the Funds' independent administrator and custodian – ███████████████████████████████████ ████████████ – that made it reasonable to invest in the Funds **despite** the "red flags." ████████████████████████████████ ████████████████████████████████████ ███████████████████████████████ Further, as discussed above, "proof of payment constitutes circumstantial evidence that the plaintiffs **lacked** knowledge of the scheme." *U.S. Foodservice*, 2013 WL 4609219, at *9 (emphasis in original). Finally, because Citco asserts that "[t]he 'red flags' . . . consisted of information that was available to anyone," (Br. 28), the issue is not individualized. *See Public Employees' Retirement System of Mississippi v. Merrill Lynch & Co., Inc.*, 277 F.R.D. 97, 116 (S.D.N.Y. 2011) (certifying securities fraud class action because "generalized proof" would address arguments that publicly available information placed investors on inquiry notice).

In sum, the District Court did not abuse its discretion because the Class may prove reliance through common evidence, through presumed reliance on material omissions, and the clear predominance of common issues when the federal securities claim is viewed as a whole.

## II.  THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN CERTIFYING COMMON LAW CLAIMS AGAINST CITCO

### A.  Common Issues Predominate on the Common Law Claims Against Citco

Certain of the common law claims against Citco (*e.g.*, negligent misrepresentation) involve issues of reliance as to which Point I applies.[21]  As to common law claims for breach of fiduciary duty, negligence, breach of contract, and aiding and abetting breach of fiduciary duty, reliance is not an element.  *See, e.g., Johnson v. Nextel Commuc'ns, Inc.*, 660 F.3d 131, 138 (2d Cir. 2011) ("The

---

[21] Common evidence can be used to demonstrate reliance under New York law. *See King v. Club Med, Inc.*, 76 A.D.2d 123, 127 (N.Y. App. Div. 1st Dep't 1980) (certifying class action involving uniform misrepresentations over defendants' individual reliance objection).  There, the circumstances supported an inference of reliance, because it was "not plausible" that plaintiffs "opted to spend a July vacation on a tropical island in a 'luxury' hotel with air conditioning, private bathroom and electricity without having 'relied' on those [false] representations." *Id.*  Here, it is "not plausible" that Class members purchased shares in the Funds without relying on Citco's NAV (and on PwC's audited financial statements), which established the value of the investments.  *See Becher v. Long Island Lighting Co.*, 64 F.Supp.2d 174, 181 n.1 (E.D.N.Y. 1999) (relying on *King* – "an oft cited New York Appellate decision" – and analyzing why reliance is no bar to certification of fraud claims); *Weinberg v Hertz Corp.*, 116 AD2d 1, 6-7 (N.Y. App. Div. 1st Dep't 1986) ("The emphasis by defendant on the alleged rule that because fraud claims are made, questions of individual reliance defeat a determination of class certification, has been answered otherwise by this court."), *aff'd*, 69 NY2d 979 (N.Y. 1987); *Stellema v. Vantage Press, Inc.*, 109 A.D.2d 423, 425-26 (N.Y. App. Div. 1st Dep't 1985) (affirming certification of fraud claim where "representations . . .  were uniform" and "no reason appears why the trial court cannot make a determination as to the measure and extent of proof required on [reliance]").

elements of a claim for breach of a fiduciary obligation are: (i) the existence of a

fiduciary duty; (ii) a knowing breach of that duty; and (iii) damages resulting

therefrom."); *Di Benedetto v. Pan Am World Serv., Inc.*, 359 F.3d 627, 630 (2d Cir.

2004) (negligence claim must allege "(1) that the defendant owed him or her a

cognizable duty of care; (2) that the defendant breached that duty; and (3) that the

plaintiff suffered damage as a proximate result of that breach.").

Accordingly, claims for breach of fiduciary duty and negligence are

routinely certified.  *See, e.g.*, *Bd. of Trs. of the AFTRA Ret. Fund v. JPMorgan

Chase Bank*, 269 F.R.D. 340, 349 (S.D.N.Y. 2010) (class-wide questions included

whether defendant owed and breached fiduciary duties); *In re Marsh ERISA Litig.*,

265 F.R.D. 128, 142 (S.D.N.Y. 2010) ("the Advisory Committee Notes to the 1966

Amendment of Rule 23(b)(1)(B) specifically state that certification is especially

appropriate in cases charging breach of trust by a fiduciary to a large class of

beneficiaries"); *In re Nigeria Charter Flights Contract Litig.*, 233 F.R.D. 297, 306

(E.D.N.Y. 2006) (granting certification where all of plaintiffs' damages stemmed

from same allegedly negligent conduct).  The same is true for breach of contract

claims.  *See Steinberg v. Nationwide Mut. Ins. Co.*, 224 F.R.D. 67, 74 (E.D.N.Y.

2004) ("[C]laims arising from interpretations of a form contract appear to present

the classic case for treatment as a class, and breach of contract cases are routinely

certified as such.").

Moreover, in a case against a Madoff feeder fund's custodian, *Levinson v. Westport National Bank*, No. 09-00269, (D. Conn. Dec. 14, 2011), Dkt. No. 368, the court certified a class of investors based, in part, on finding defendant "acted uniformly towards the account holders in conformity with uniform custodial agreements," which "adequately demonstrates that common questions will predominate over individual questions in resolving Plaintiffs' breach of contract, breach of fiduciary duty, negligence, . . . [and] unjust enrichment . . . claims." *Id.* at 28.

Citco argues that reliance is necessary to "establish Citco's supposed fiduciary duty and duty of care," citing *Credit Alliance*, Citco Br. 25-26.  As discussed in Point III.C, *infra*, the focus of the *Credit Alliance* test is whether the third-party service provider (Citco) understood plaintiffs would be relying on its statements and professionalism.  The Class will make this case based on common evidence of Citco's own admissions and documents.  As in *Pension Comm.*, 446 F.Supp.2d at 198-200, where Citco was sued as fund administrator, the *Credit Alliance* test is met, because, *inter alia*, "Defendants were aware that plaintiffs would rely on their statements of the Funds' NAVs" and that the "NAV was the only measure by which [plaintiffs] could evaluate shares in the Funds in order to make investment decisions."

Common evidence also will show that that Citco was in a far superior position with access to confidential information than any of Class member. *Cf.* Citco Br. 26-27. As the District Court recognized in holding that Citco had fiduciary duties to Fund investors, the "Citco Defendants' 'superior position or superior access to confidential information [w]as so great as virtually to require the other party to repose trust and confidence in the first party,' and that the Citco Defendants were 'under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation.'" *Anwar II*, 728 F.Supp.2d at 441 (quoting *Pension Comm.*, 446 F.Supp.2d at 195–96)). Common evidence will establish this at trial.

Nor is reliance required to show causation, (Citco Br. 27). *See LNC Invs., Inc. v. First Fidelity Bank*, 173 F.3d 454, 461 (2d Cir. 1999) (Sotomayor, J.) ("no controlling authority . . . suggest[s] that reliance is required to establish causation in a breach of fiduciary duty or a breach of contract case."). In addressing whether a trustee had acted prudently to safeguard trust assets – an issue analogous to the fiduciary duty claims against Citco – this Court held: "This duty of prudence was not qualified, either in the Trust Indenture or in the common law, by the concept of reliance." *Id.* at 462.[22]

---

[22] Even if reliance were required to prove causation, the Class will show reliance on Citco's misstatements and omissions based on common evidence. *See* Points I.A-B above.

47

The Class will prove causation and damages for its duty-based claims based on common evidence.



23

**B.      Citco's Affirmative Defenses Do Not Preclude Certification**

Comparative negligence is not a defense to a claim of intentional or recklessly false misrepresentations.  *See Mfs. Hanover Trust Co. v. Drysdale Sec. Inc*., 801 F.2d 13, 18, 23–25 (2d Cir. 1986); *Morgan, Olmstead, Kennedy & Gardner, Inc. v. Schipa*, 585 F.Supp. 245, 248 (S.D.N.Y. 1984).  Nor is it a defense

---

[23] Citco also argues that individual issues arise in establishing the underlying fraud by FGG Defendants which Citco is alleged to have aided and abetted, (Citco Br. 40-41).  **First**, as Judge Marrero correctly found, reliance on FGG's misrepresentations, which were contained within uniform offering and marketing materials, can be shown by common evidence.  *See* SAP-13-14.  **Second**, ██████████████████████████████████████████████████████████████████████████████████████████████████████  **Third**, this relates at most to aiding-and-abetting fraud, but not breach of fiduciary duty, *see* A-305-06, nor does it affect the conclusion of predominance.

to claims of breach of fiduciary duty.  *See, e.g.*, *Conway v. Icahn & Co., Inc.*, 16

F.3d 504, 511 (2d Cir. 1994) (breach of fiduciary duty damages cannot be reduced

for contributory negligence); *Solutia Inc. v. FMC Corp.*, 456 F.Supp.2d 429, 452

(S.D.N.Y. 2006).

     Comparative negligence is an affirmative defense to negligent

misrepresentation and negligence, but is relevant only to damages.  *See Ashbourne*

*v. City of New York*, 918 N.Y.S.2d 88 (App. Div. 2011) ("Under a comparative

negligence approach, the amount of damages is diminished depending on the

percentage that the plaintiff is negligent."); *In re Indus. Diamonds Antitrust Litig.*,

167 F.R.D. 374, 385 (S.D.N.Y. 1996) (certifying class because each "lack of

knowledge and due diligence may be considered, if necessary, when the court

addresses each putative class member's damage claim"); *Visa Check*, 280 F.3d at

139 ("[c]ommon issues may predominate when liability can be determined on a

class-wide basis, even when there are some individualized damage issues," such as

a mitigation defense); *id.* at 138 ("the question for purposes of determining

predominance is not whether a defense exists, but whether the common issues will

predominate over the individual questions raised by the defense.").[24]  Moreover, as

---

[24] Citco's reliance on *In re Fosamax Prods. Liab. Litig.*, 248 F.R.D. 389 (S.D.N.Y.
2008) (Citco Br. 30), is misplaced.  There, a case-by-case inquiry was necessary to
determine whether plaintiffs were comparatively negligent and assumed the risk

a matter of law and fact, no Class member was contributorily negligent because no

Class member knew or had reason to suspect that Citco ████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████

    Finally, the District Court may employ "a number of management tools" to

address any individualized issues following summary judgment motions or trial, if

necessary, up until final judgment. *Visa Check*, 280 F.3d at 141.  Of course, if

liability is upheld on any non-negligence based claims, comparative negligence is

moot. *See* p. 48 *supra*.[25]

### C.    Citco's Standing Arguments Do Not Affect, Let Alone Preclude, Class Certification

    1.    Citco's Standing Arguments Are Not Properly Part of the Rule 23 Analysis

    Citco argues that Plaintiffs lack standing to bring their claims.  Citco Br 56-

72.  This issue is not properly before the Court because it is a merits issue

---

based on having done independent research or being given warnings by individual
prescribing physicians. *Id.* at 401–02.

[25] Where, as here, a certification order complies with Rule 23, a claim that it
violates the Rules Enabling Act and Due Process Clause (Citco Br. 55) is meritless.
*See Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 560 (2d Cir. 1968); *Schwab v.
Philip Morris USA, Inc.*, 449 F.Supp.2d 992, 1255 (E.D.N.Y. 2006).  Moreover, "a
fraud perpetrated on numerous persons by the use of similar misrepresentations
may be an appealing situation for a class action."  Fed. R. Civ. P. 23(b)(3),
Advisory Committee Notes to the 1966 Amendment.

unrelated to evaluating class certification.  If it were to be reached, however,

Plaintiffs have standing, as Judge Marrero has found.

"Merits questions may be considered to the extent – but only to the extent –

that they are relevant to determining whether Rule 23 prerequisites for class

certification are satisfied."  *Amgen*, 133 S. Ct. at 1195; 1194-95 ("Rule 23 grants

no license to engage in free-ranging merits inquiries at the certification stage.");

*IPO*, 471 F.3d 24, 41 ("[A] district judge should not assess any aspect of the merits

unrelated to a Rule 23 requirement").  Standing bears no relationship to any aspect

of class certification because the same standing issues exist whether the plaintiff is

a single individual or a thousand-member class.  *See In re Lorazepam &*

*Clorazepate Antitrust Litig.*, 289 F.3d 98, 107 (D.C. Cir. 2002) ("the [standing]

question is unrelated to class certification under Rule 23," in Rule 23(f) appeal).[26]

Nor does standing have anything to do with "superiority" under Rule

23(b)(3) (Citco Br. 56-57); that inquiry focuses on whether, for whatever claims

the Class does have, class adjudication is superior.  If Citco were correct and

certain claims are derivative, it would simply mean that defendants had a winning

---

[26] "'Shareholder standing' is a prudential limitation that is separate from the rules governing standing under Article III of the Constitution." *Amusement Indus., Inc. v. Stern*, 2010 WL 2976199 (S.D.N.Y. 2010); *see Grubbs v. Bailes*, 445 F.3d 1275, 1280 (10th Cir. 2006) ("shareholders suffer injury in the Article III sense" even if they lack prudential standing); *Zurich Ins. Co. v. Logitrans, Inc*., 297 F.3d 528, 532 (6th Cir. 2002) (shareholder had Article III standing even if not real party in interest).

defense.  It would say nothing about the superiority of a class action to determine the merits of claims that investors **do** have standing to prosecute.[27]

If prudential standing were to be considered, it would, in any event, affect only the Class' "holder" claims, since Citco concedes that standing has no bearing on purchaser claims (based on fraud, negligence, breach of fiduciary duty or breach of contract) that resulted in the Class members' investments in the Funds. *See* Citco Br. 56-57; 69.  As discussed below, even if standing were relevant to the Rule 23 analysis, the District Court properly found standing here.

> 2.  The Internal Affairs Doctrine Does Not Apply to Plaintiffs' Claims

Whether a plaintiff may properly bring a direct claim does not implicate the Funds' internal affairs, and thus does not trigger New York's "internal affairs doctrine" (Citco Br. 57-65).  That doctrine applies, in the first instance, when the **substance** of plaintiffs' claims implicates a fund's internal affairs.  For example, a fund's internal affairs are involved in claims alleging that the fund or its general

---

[27] Citco's reliance on three district court cases from outside the Second Circuit is misplaced.  Citco Br 57 n.21.  Although the cases addressed direct/derivative standing in assessing superiority, they preceded *Amgen's* express prohibition on considering merits issues and did not address whether such an inquiry is proper.  Whether a claim is direct or derivative is a merits inquiry.  *See*, *e.g., Buckley v. Control Data Corp.*, 923 F.2d 96, 98 (8th Cir. 1991) ("[w]hether the claims asserted by [the plaintiffs] are direct or derivative, bears [] on the merits of their claims").  Consideration of non-constitutional standing questions, *see* n.26 *supra*, is inappropriate on class certification.  *Lorazepam*, 289 F.3d at 107.

partners misappropriated money or improperly issued shares.[28]  But the Class here

makes no such claims.

Class members' standing to bring a direct action does not involve the Funds'

internal affairs, but rather turns on whether Citco's relationship with Plaintiffs was

such that Citco owed duties **directly to Plaintiffs** – in addition to any duties it may

have owed to the Funds.  *See, e.g., Excimer Assocs., Inc.* v. *LCA Vision, Inc.*, 292

F.3d 134, 140 (2d Cir. 2002) ("[A] shareholder may bring an individual suit if the

defendant has violated an **independent duty to the shareholder**, whether or not

the corporation may also bring an action."); *Credit Alliance*, 65 N.Y.2d 536;

*Anwar II*, at 432-33.[29]

### 3.    Class Members Have Standing to Bring "Holder" Claims Directly

Under the law of any relevant jurisdiction, Plaintiffs' holder claims are

direct claims.  As Citco acknowledges, "[t]he district court held that Citco owed

Class members a duty of care under *Credit Alliance*, which requires 'reliance by a

---

[28] *See, e.g., Pension Committee*, 446 F.Supp.2d at 192; *Lyman Commerce Solutions, Inc. v. Lung*, 2013 WL 4734898, 4 (S.D.N.Y. Aug. 30, 2013); *Drenis v. Haligiannis*, 452 F.Supp.2d 418, 427-428 (S.D.N.Y. 2006); *Stephens v. Nat'l Distillers & Chem. Corp.*, 1996 WL 271789, at *4 (S.D.N.Y. May 21, 1996), all noting that the internal affairs doctrine is triggered by the substance of plaintiffs' allegations, and applying New York law.

[29] Because the Class members' standing to bring direct actions against a third party (as opposed to their standing to bring derivative actions on the Funds' behalf) does not implicate the Funds' "organization and internal affairs," N.Y. Partnership Law §121-901 does not apply (Citco Br. 58, 60).

known party' on [Citco's] alleged misrepresentations."  Citco Br. 26.  "Under New York law, a shareholder may sue individually 'when the wrongdoer has breached a duty owed to the shareholder independent of any duty owing to the corporation wronged.'"  *Anwar II*, 728 F.Supp.2d at 400-01 (quoting *Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt. LLC*, 376 F.Supp.2d 385, 409 (S.D.N.Y.2005) (quoting *Abrams v. Donati*, 66 N.Y.2d 951 (N.Y. 1985).  Accordingly, under New York law, the Class members have standing to bring direct claims alleging breach of Citco's duties owed to them.[30]

Under BVI law, a shareholder may bring a direct action if "the shareholder has suffered a loss which is distinct from that suffered by the company."  A-1911 (citing *Johnson v. Gore Wood & Co*. (2002)).[31]  This includes cases in which the shareholder's loss was "in excess" of that of the company.  *Id.* (citing *Giles v. Rind*

---

[30] Citco claims that the Appellate Division "recently decided, as a correct statement of New York law, 'to adopt Delaware's test for a direct action in *Tooley*.'"  Citco Br. 71 (quoting *Yudell* v. *Gilbert*, 949 N.Y.S.2d 380, 381 (App. Div. 1st Dep't 2012)).  That is not so.  Rather, *Yudell* found that *Tooley* was "consistent" with New York law which "consists of case by case analyses, that are sometimes difficult to apply to new fact patterns."  *Id.*  Accordingly, *Yudell* adopted *Tooley* "**in this case**," not, as Citco claims, "as a correct statement of New York law."  *Id.*

[31] Under BVI law, the requirement that a plaintiff's losses be distinct from those of the fund (sometimes referred to as the "reflective loss principle") is likely satisfied if the fund's own claims are barred by the *in pari delicto* rule, SAP-1913-14; SAP-1930.  Citco itself has argued, in opposition to claims by the Greenwich Sentry Funds, that those claims are barred by the *in pari delicto* rule.  *See* SAP-14314-16.

(2003)).  Similarly, under Delaware law plaintiffs may bring a direct action if they suffered harm independent of the harm suffered by the corporation.  *Feldman v. Cutaia*, 951 A.2d 727, 732 (Del. Supr. 2008).

Plaintiffs easily satisfy these tests.  **First**, in contrast to Plaintiffs, the Funds themselves suffered no injury at all as a result of Citco's misstatements and omissions.  If Citco had not breached its duties in calculating the NAV and safeguarding assets, the NAV would have been zero and the Funds would not have acquired any assets.  Thus, the Funds were no worse off with the misconduct than they would have been without it; in both cases, they would have had no assets. *Anwar II*, 728 F.Supp.2d at 401 ("[T]he alleged concealment or reckless ignorance by Defendants did not harm the Funds as such.  Rather . . . [w]ithout the fraud and other wrongs alleged in this action, the Funds would not have existed."); *see also Fraternity Fund Ltd.*, 376 F.Supp.2d at 409 (direct action was proper because overstating the NAVs of investment funds constituted fraud "committed on the shareholders . . . rather than on the Funds," since shareholders, not the funds "were injured when they . . . retained their investments in reliance upon the misstatements.").

**Second**, Class members here – who by definition consist of only investors who suffered net losses – suffered injuries that are distinct from the Funds' injuries.  Class members' total damages are equal to the sum of their net individual

55

losses, *i.e.*, the amount they collectively invested, minus the amount they collectively redeemed.  Although the Funds' damages are likewise measured by net loss, that amount is necessarily less than the Class' total net loss.  The reason is because the Funds' net loss is reduced by the net gains of investors who managed to redeem more than they invested (and thus are not Class members). Consequently, the Class members' net losses – and thus their damages due to Citco's misconduct – far exceed those of the Funds.  *Feldman*, 951 A.2d at 732 ("[I]f the stockholder suffered harm independent of any injury to the corporation **that would entitle him to an individualized recovery**, the cause of action is direct."); *Anwar II*, 728 F.Supp.2d at 402 ("availability of direct actions is further shown by the asymmetrical injury").[32]

Expressed differently, the damages of each Class member are not equivalent to a *pro rata* distribution to shareholders in the Funds.  Consider two investors each of whom held 100 shares when Madoff's fraud was discovered; if the Fund had a recovery, each shareholder may well receive the same *pro* rata distribution. But if one of the shareholders had previously redeemed another 100 shares at a profit, its net loss would be reduced by that amount, while the other shareholder

---

[32] None of the BVI cases cited by Citco's experts involved independent injuries like those suffered by Plaintiffs in this case, *i.e.*, where the company suffered no loss or, if it did, that loss was vastly exceeded by the plaintiffs' losses.  A-1498-1507; *see* A-1911-14, 1924-34 (Plaintiffs' expert on standing to bring direct claims).

(having made no redemptions) would have a net loss equal to the amount originally invested. Thus, this issue – which this Court need not even reach – was correctly decided by the District Court.

## III. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN CERTIFYING COMMON LAW CLAIMS AGAINST PWC DEFENDANTS

The District Court similarly did not abuse its discretion in finding that Rule 23(b)(3)'s predominance requirement was satisfied with respect to the two claims – for negligence and negligent misrepresentation – against the PwC defendants. Like Citco, PwC does not dispute that each of the Rule 23(a) requirements was satisfied and that critical common issues exist – among others, whether PwC was negligent in conducting its audits of the Funds for over a decade.

PwC takes issue with the failure of the Order specifically to discuss PwC and contends that individual issues exist regarding reliance and application of the *Credit Alliance* test. We address these issues in turn.

### A. The Certification Order Complies with Rule 23

PwC essentially argues that Rule 23 requires that a class certification order explicitly recite the district court's "claim-by-claim" analysis against each defendant. PwC Br. 10-17. PwC cites no authority from this Circuit to support engrafting such a requirement onto Rule 23. On the contrary, this Court has "not required that the district court utilize any particular verbal formula, nor that the

57

district court make express findings on each requirement." *Shahriar*, 659 F.3d at 251-52. "Where the basis of the district court's ruling is obvious in context, we will not reverse a class certification simply because the district court has not explicitly recited each finding." *Id.*

PwC's principal authority, *Bolin v. Sears, Roebuck & Co.*, 231 F.3d 970 (5th Cir. 2000), is not controlling and is readily distinguishable. *Bolin* involved certification under Rule 23(b)(2) (not (b)(3) as here) and the issue was whether the complaint sought primarily damages or injunctive relief. In that context, the Fifth Circuit unremarkably stated: "To determine whether damages predominate, a court should certify a class on a claim-by-claim basis, treating each claim individually and certifying those claims for which certification is appropriate." *Id. at* 976. No such issue exists here, where all claims seek damages based on a common course of conduct that injured all Class members in the same way.[33]

In this Circuit, the procedural requirements for a class certification decision are clear:

---

[33] Nor does *Amgen* (PwC Br. 12) support PwC. There, the Supreme Court did what courts – including this Court and the District Court here – typically do: It focused its opinion where the real controversy lay, which was on one element of the relevant cause of action. On the facts in *Amgen*, that element was the Rule 23(b)(3) predominance analysis and whether the fraud-on-the-market presumption required plaintiffs to show materiality.

>(1) a district judge may certify a class only after making
>determinations that each of the Rule 23 requirements has been met;
>(2) such determinations can be made only if the judge resolves factual
>disputes relevant to each Rule 23 requirement and finds that whatever
>underlying facts are relevant to a particular Rule 23 requirement have
>been established and is persuaded to rule, based on the relevant facts
>and the applicable legal standard, that the requirement is met; (3) the
>obligation to make such determinations is not lessened by overlap
>between a Rule 23 requirement and a merits issue, even a merits issue
>that is identical with a Rule 23 requirement; [and] (4) in making such
>determinations, a district judge should not assess any aspect of the
>merits unrelated to a Rule 23 requirement . . . .

*IPO*, 471 F.3d at 41.

Under this standard, this Court has approved numerous class certification decisions that lacked anything approaching the kind of defendant-by-defendant, claim-by-claim discussion that PwC envisions. *See, e.g., Brown*, 609 F.3d at 471, 483-86 (affirming certification of citywide plaintiff class in a multi-count case with no claim-by-claim analysis); *In re Visa Check/Mastermoney Antitrust Litig.*, 280 F.3d 124, 136-140 (2d Cir. 2001) (Sotomayor, J.) (affirming certification decision focusing on whether plaintiffs' overcharge theory was subject to common proof and whether causation and damages could be proven on a class-wide basis; no separate analysis of tying and attempted monopolization claims).[34]

---

[34] PwC's cases (PwC Br. 12-13) are not to the contrary. *See, e.g., UFCW Local 1776 v. Eli Lilly & Co.*, 620 F.3d 121, 132-35 (2d Cir. 2010) (analyzing key issue of whether common evidence could show proximate or transaction causation for plaintiffs' excessive price theory); *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1270 (11th Cir. 2009) (test for predominance depends not on claim-by-claim

### B.    Common Evidence Establishes Reliance on PwC Audit Opinions

The claims now remaining in the case against PwC are limited to injuries suffered by those Fund shareholders who made additional investments (or held existing investments) after PwC issued an audit opinion addressed to those shareholders.  *See Anwar III*, 884 F.Supp.2d at 97.  ███████████████████ ███████████████████████ It defies reason and common sense to claim that Class members did not rely on the audits in making or holding investments, since anything other than a "clean" audit is anathema to investors. *King*, 76 A.D.2d at 127 (certifying class based on circumstantial evidence of reliance where it was "not plausible" that plaintiffs would have made purchases "without having 'relied' on [defendants'] representations"); *see supra* at n.21 (citing cases).

Both direct and circumstantial evidence show reliance on PwC's misrepresentations on a class-wide basis.  PwC's "clean" audit reports



analysis, but rather whether "common issues truly predominate over individualized issues").



Testimony confirms what common sense tells us:  Plaintiffs invested or retained investments in the Funds in reliance on PwC's representations.[35]  This can be established on a class-wide basis.  There is common evidence of reliance because "there was no other independently-verified third party financial information about the Funds besides the [PwC Member Firms'] audited financial statements," *Anwar II*, 728 F.Supp.2d at 455.[36]

---

[35] ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

[36] PwC's cases are not to the contrary.  Although it "often" may be difficult to demonstrate class-wide reliance, *see Wal-Mart*, 131 S. Ct. at 2552 n.6 (PwC Br. 11, 22, 24), the misrepresentations at issue here – which hid audit failures relating to a Ponzi scheme – are vastly different from a garden-variety valuation dispute for an otherwise legitimate company.  Similarly, in *Levitt v. PricewaterhouseCoopers, LLP*, 2007 WL 2106309, at *1 (S.D.N.Y. July 19, 2007) (PwC Br. 24), where the claim was that fund assets were worth less than represented, the issue of reliance turned on how much trust was placed in the auditor's professional judgment of fair

Moreover, PwC is flatly wrong in arguing that the "reliance inquiry . . . is inherently individualized" because "New York allows no **presumption** of reliance in this context." PwC Br. 22 (emphasis in original). On the contrary, "a presumption of reliance is available [against an auditor] under the circumstances presented" here. *See Ackerman v. Price Waterhouse*, 683 N.Y.S.2d 179, 198 (N.Y. 1st Dep't 1988). New York "has recognized the application of a presumption of reliance." *In re Coordinated Title Ins. Cases*, 2004 WL 690380, *5 (N.Y. Sup. 2004) (citing *Ackerman*, 683 N.Y.S.2d at 197); *see also supra* at n.21 (citing cases).[37]

---

value; here, of course, no judgment was required to value the Funds' assets purportedly held by Madoff at zero. *See also Eli Lilly*, 620 F.3d at 135 (2d Cir. 2010) (proximate cause disrupted by exercise of independent medical judgment using information not provided by defendants) (PwC Br. 13); *Abu Dhabi*, 269 F.R.D. at 261 (proximate cause disrupted by plaintiffs' sophisticated "independent credit assessments," and the need to perform professional risk assessment to evaluate the importance of allegedly false credit ratings that affected somewhat the pricing – not the existence – of assets otherwise accurately described) (PwC Br. 23, 24, 26).

[37] Some district courts have declined to apply the *Affiliated Ute* presumption to common law fraud, but these holdings all are premised on the mistaken assumption that New York state courts had never done so. *See, e.g., Feinberg v. Katz*, 2007 WL 4562930, at *5 (S.D.N.Y. Dec. 21, 2007) ("It is doubtful that New York courts would apply to a common law fraud claim that presumption of reliance found in *Affiliated Ute* and other securities cases."); *Waksman v. Cohen*, 2002 WL 31466417, at *5 (S.D.N.Y. Nov. 4, 2002) ("New York courts have chosen not to abandon the requirement of reliance in common law fraud cases"). Virtually all

Furthermore, in holding that "class certification should not be denied on the ground that individual issues of reliance exist," *Ackerman*, 683 N.Y.S.2d at 198, New York law recognizes that "reliance issues are no bar to class certification where identical misrepresentations are made in writing to a large group." *Id.* Indeed, a class was certified against PwC's predecessor in circumstances very similar to this case, where "plaintiffs allege[d] that the Schedules K-l were negligently prepared in the same manner . . . and they rely on the identical written misrepresentations and omitted warnings in the transmittal letters from [Price Waterhouse]." *Id.*



such decisions take an overbroad view of *Strauss v. Long Island Sports, Inc.*, 401 N.Y.S.2d 233, 237 (2d Dep't 1978). In *Strauss*, the appellate division merely declined to apply the fraud-on-the-market theory in an advertising fraud case and noted in passing that *Affilated Ute* was inapplicable because *Strauss* did not involve material omissions. Courts have sometimes relied upon *Strauss* as authority that *Affilated Ute* does not apply to common law claims, notwithstanding the recent authority discussed herein holding otherwise.

███████████████████████████████ Accordingly, the class

will be able to demonstrate reliance through common evidence.

### C.    Application of the *Credit Alliance* Test Is a Common Issue

PwC argues that the "*Credit Alliance* test is inherently individualized on

multiple levels."  PwC Br. at 19.  *Credit Alliance*, however, focuses on the **auditor**

and whether the **auditor** (i) understood plaintiffs would be relying on the auditor's

statements, (ii) knew or had the means to know plaintiffs' identities, and (iii)

engaged in sufficient linking conduct with the plaintiffs.  *See Credit Alliance*, 65

N.Y.2d at 551; *Glanzer v. Shepard*, 233 N.Y. 236, 240 (N.Y. 1922) ("The

controlling circumstance is not the character of the consequence, but its proximity

or remoteness **in the thought and purpose of the actor**.")  Accordingly, each

Class member's ability to satisfy *Credit Alliance* will depend on the same,

common evidence.  In such a situation, where there is allegedly "a fatal similarity –

failure of proof as to an element of the plaintiffs' cause of action," the Supreme

Court has directed that the "contention is properly addressed at trial or in a ruling

on a summary judgment motion.  The allegation should not be resolved in deciding

whether to certify a proposed class."  *Amgen*, 133 S. Ct. at 1197.

PwC's Brief cites no authority that the *Credit Alliance* test is a plaintiff-

specific inquiry.  As in other breach of duty cases, the issue of whether defendant

owed a duty to a particularized group is a common issue.  *See, e.g.*, *Bd. of Trs. of*

*the AFTRA Ret. Fund*, 269 F.R.D. at 349 (certifying breach of fiduciary duty claim; "common issues of law and fact" included whether "[defendant] owed a fiduciary duty of prudence to all of the class members); *Bruhl*, 257 F.R.D. at 698 (certifying fiduciary duty claims where duty arises "from the same alleged scheme or course of conduct" and uniform representations in written materials).  Prior to this appeal, PwC has argued three times in this case that failure to satisfy *Credit Alliance* requires dismissal of **all** negligence-based claims without any individualized consideration.  *See* 884 F.Supp.2d at 94-95; 800 F.Supp.2d at 572; 728 F.Supp.2d at 454.  Indeed, PwC successfully limited all Class members' damages on a global basis.  *See Anwar III*, 884 F.Supp.2d at 97.

Here, the Class will meet the *Credit Alliance* test based on common evidence.  **First**, the "**transmission**" of PwC's audited financial statements to the Funds' investors "was not merely one possibility among many, but the **end and aim of the transaction**."  *Credit Alliance*, 65 N.Y.2d at 549 (emphasis in original); *see Prudential Ins. Co. of Am. v. Dewey, Ballantine, Bushby, Palmer & Wood*, 80 N.Y.2d 377, 383 (1992); *Anwar II*, 728 F.Supp.2d at 455.

**Second**, existing Fund investors who made subsequent investments are "known parties." *See, e.g.*, *Anwar III*, 884 F.Supp.2d at 97-98; *White v. Guarente*, 43 N.Y. 2d 356, 361 (1977) ("The instant situation did not involve prospective limited partners, unknown at the time and who might be induced to join, but rather actual limited partners, fixed and determined."); *Cromer Fin. Ltd. v. Berger*, 2001 WL 1112548, at *5 n.7 (S.D.N.Y. Sept. 19, 2001) ("existing shareholders" were known parties to auditors). Here, PwC specifically addressed its false audit opinions to these existing investors.

*Sykes v. RFD Third Ave 1 Assocs., LLC*, 15 N.Y.3d 370, 373 (2010) (PwC Br. 20), is no help to PwC. "*Sykes* should not be read to require that the defendant know the identity of each particular plaintiff; rather, plaintiffs are a 'known party' if they are members of a '**settled and particularized class**,' as opposed to an 'indeterminate class.'" *King County, Wash. v. IKB Deutsche Industriebank AG*, 2012 WL 1592193. at *10 (S.D.N.Y. May 4, 2012) (quoting *White*, 43 N.Y.2d at 363)). *Sykes* also holds that a claim is stated where a service provider "had the means of knowing of plaintiffs' existence when it made the statements." *Sykes*, 15 N.Y.3d at 373. Here, PwC actually had Plaintiffs' identities because it audited the

**Third**, common evidence proves there was "linking conduct" "which evinces the accountants' understanding of [Plaintiffs'] reliance." *Credit Alliance*, at 551.

*See, e.g.*, *Sec. Inv. Prot. Corp. v. BDO Seidman, LLP*, 222 F.3d 63, 75 (2d Cir. 2000) ("a plaintiff generally must show some form of direct contact between the accountant and the plaintiff, such as . . . the sharing of documents, or other 'substantive communication' between the parties."); *Prudential Ins. Co.*, 80 N.Y.2d at 385 (law firm knew the "end and aim" of opinion letter was its use by the plaintiff third-party in determining whether to permit client's debt restructuring); *Dinerstein v. Anchin, Block & Anchin, LLP*, 838 N.Y.S.2d 46, 47 (1st Dep't 2007) (auditor "admits it knew that its audit reports, which were addressed to 'the Stockholders and Directors . . .,' were to be used by [company's] stockholder and directors"); *Cromer*, 2001 WL 1112548, at *5 ("audit reports, addressed 'to the shareholders,' constitute 'substantial communication' between [auditor] and the plaintiff-shareholders sufficient to satisfy the 'linking conduct' requirement"); *Meranus v. Gangel*, 1989 WL 240072, at *3-4 (S.D.N.Y. Aug. 10, 1989) (sustaining negligent misrepresentation claim against firm that issued

67

allegedly inaccurate tax opinions).  The foregoing facts establish "near-privity" under New York law.  *See, e.g., Dorking Genetics v. United States*, 76 F.3d 1261, 1270 (2d Cir. 1996) (upholding claim because "the defendant understood the plaintiffs' reliance" – as did PwC here – "even if the plaintiffs had never interacted directly with the defendant"); *King County*, 2012 WL 1592193 at *11 (linking conduct despite no "direct contact" where defendant "Rating Agencies' ratings were prepared for the benefit of the plaintiffs, were sent to the plaintiffs, were read by the plaintiffs").

## IV. IF CLASS CERTIFICATION IS NOT AFFIRMED, THE CASE SHOULD BE REMANDED FOR FURTHER CONSIDERATION BY THE DISTRICT COURT

Rule 23(c)(1)(C) provides that "[a]n order that grants or denies class certification may be altered or amended before final judgment."  In granting certification, the District Court recognized that "[t]his Class is subject to further adjustment or decertification as warranted as facts develop."  SAP-4.  Thus, if the District Court's decision is not affirmed, remand is an appropriate course, either to make additional findings or to tailor a class certification order consistent with this Court's decision.  That is especially true where there are multiple counts on which there is no serious question that common questions predominate; and even where reliance is an element, other, non-reliance issues are appropriately treated on a class-wide basis.

68

For example, even if this Court were to find that an individualized issue is present in one or more of the claims, on remand certification could be granted pursuant to Rule 23(c)(4) on common issues, such as whether Citco or PwC performed their duties in compliance with applicable industry standards and their own representations.  *See e.g.*, *In re Nassau Cnty. Strip Search Cases*, 461 F.3d 219, 230 (2d Cir. 2006) ("We hold that . . . district courts may employ Rule 23(c)(4)(A) to certify a class on a designated issue regardless of whether the claim as a whole satisfies the predominance test"); *Cordes*, 502 F.3d at 108-09 (explaining further *Strip Search* holding); *Pelman v. McDonald's Corp.*, 272 F.R.D. 82, 95-96 n. 33 (S.D.N.Y. 2010) ("District courts should take full advantage of this provision to certify separate issues in order to reduce the range of disputed issues in complex litigation and achieve judicial efficiencies.").  Indeed, this Court could partially affirm on this basis as well.

In addition, remand would allow the District Court to consider any open issues regarding class certification with the benefit of a more fully-developed factual record.  *See, e.g., Coopers & Lybrand v. Livesay*, 437 U.S. 463, 473-74 (1978) ("if the record provides an inadequate basis for this determination, a remand for further factual development may be required"); *Inda v. United Air Lines, Inc.*, 565 F.2d 554, 563 (9th Cir. 1977) ("Much has happened since the order in question was entered . . . .  More information respecting the proposed class may have

69

become available, and a redefinition of the class may have become appropriate. We make no suggestions in any such respects, but offer the district court a free hand in extending or limiting the area of inquiry and in entertaining motions with respect to it.").

For example, in *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 522 F.3d 6, 29-30 (1st Cir. 2008), the court vacated certification and remanded "so that the district court, which has handled this case admirably so far, may reconsider those class certification orders in light of this opinion and the more fully developed record."  The certification motion was made "[b]efore discovery was completed," and the district court "repeatedly emphasized it would address that question later on a proper record – for example, at summary judgment."  *Id.* at 18-19.  Similarly here, Plaintiffs moved for certification in March 2011 before taking any depositions of PwC and Citco and while document discovery was ongoing; fact discovery ended on June 30, 2013.  Moreover, the District Court expressly said it will address the standing and *Credit Alliance* arguments at summary judgment, *see Anwar III*, 884 F.Supp.2d at 98-99, which will be filed in early 2014.



70



This evidence of recklessness, willful blindness and non-disclosure confirms the District Court's well-supported findings that common issues predominate, including with respect to reliance.[38]

With respect to PwC, in depositions taken after class certification briefing,

To the extent PwC argues that further analysis of claims against it is necessary, that too can be done on remand. This is particularly true because the Certification Order was issued before the FGG settlement was

---

[38] For instance, although Citco argues that investors did not rely on the NAV statements,

approved and the FGG Defendants dropped from the case.  Finally, as noted above,

the District Courts have latitude on certifying a claim while allowing for

individualized hearings on certain issues.  *See, e.g., Brown*, 609 F.3d at 486; *Visa*

*Check*, 280 F.3d at 141.

## <u>CONCLUSION</u>

For the foregoing reasons, the District Court's Certification Order should be

affirmed.

Dated:  October 11, 2013                        Respectfully submitted,


By:/s/ David A. Barrett
                                     

Robert C. Finkel                                     David A. Barrett
WOLF POPPER LLP                              Howard L. Vickery, II
845 Third Avenue                                   BOIES, SCHILLER & FLEXNER LLP
New York, NY 10022                            575 Lexington Avenue
Telephone:  (212) 759-4600                  New York, NY 10022
Facsimile:   (212) 486-2093                  Telephone: (212) 446-2300
                                               Facsimile: (212) 446-2350


Victor E. Stewart                                    Stuart H. Singer
LOVELL STEWART HALEBIAN              BOIES, SCHILLER & FLEXNER LLP
   JACOBSON LLP                                401 East Las Olas Boulevard, #1200
61 Broadway, Suite 501                         Ft. Lauderdale, Florida 33301
New York, NY 10006                            Telephone:  (954) 356-0011
Telephone: (212) 608-1900

                                               *Attorneys for Plaintiffs-Appellees*
                                               *Representative Anwar Plaintiffs*

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Rule 32(a)(7)(C) of the Federal Rules of Appellate Procedure,

the foregoing brief is in 14-Point Times Roman proportional font and contains

17,721 words and thus is in compliance with the type-volume limitation set forth in

Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure.


Dated:  New York, New York
       October 11, 2013                /s/ David A. Barrett
                                   David A. Barrett